SAMUEL WELSH et al., Appellants, *v.* JOHN H. GOSSLER et al., Respondents.

Defendants, who were doing business in New York, contracted with one F. to sell him a quantity of sugar to be sent from St. Vincent, and to be "May-June shipment." The purchase-money to be paid at the port of departure. F. thereupon applied to plaintiffs for, and received from them, a letter of credit to their correspondents in London, which, by its terms, expired unless used before June 30, and required a May or June shipment, and bills of lading to plaintiffs' order; this was delivered by F. to defendants; at defendants' request a credit by telegram was substituted, the form and language of which was dictated and proposed by defendants. It contained no prohibition as to use later than June. No change, however, was made in the original contract. No shipment of

sugar was made until July, when a cargo was shipped the bills of lading being made to plaintiffs, and the credit was used therefor. On arrival of the sugars at New York, F. refused to receive them, because not shipped in compliance with the contract. Plaintiffs thereupon notified defendants that they could not receive them for F., and offered to surrender them upon payment of the advances. Upon their refusal to take them, and after due notice, plaintiffs sold the sugars. In an action to recover the balance of the ·advances after application of the proceeds of sale, *held*, that F. was not bound to accept sugars shipped in July ; that neither defendants nor their representatives at St. Vincent acquired a right to use the credit after June 30, although the form of the telegraphic credit enabled them to do so; that in substance and effect defendants took plaintiffs' money as a forced loan or advance upon the consignment of the sugars to be sold on commission on their account; that plaintiffs therefore were entitled to recover, and a nonsuit was error.

*Welsh* v. *Gossler* (15 J. & S. 104), reversed.

(Argued June 12, 1882; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made at the February term, 1881, which affirmed a judgment in favor of defendants, entered upon an order nonsuiting plaintiffs upon trial. (Reported below, 15 J. & S. 104.)

This action was brought to recover an alleged balance due for moneys had and received.

The material facts are stated in the opinion.

*Edward Patterson* for appellants. The defendants, having failed to perform their contract with Finlay, discharged him from his obligation to take the goods. (*Bowes* v. *Shand*, L. R., 5 H. of L. 28 ; Benjamin on Sales, *passim ; Hoare* v. *Rennie*, 5 H. & N. 19 ; 29 L. J. Exch. 73 ; *Catlin* v. *Tobias*, 26 N. Y. 217 ; *Rouse* v. *Lewis*, 2 Keyes, 352 ; *Russell* v. *Nicholl*, 3 Wend. 112.) He was entitled to consider that the defendants, by their non-performance, had themselves rescinded the contract. (*Seipel* v. *Int. Life Ins. Co.*, 84 Penn. St.) Plaintiffs' special agency was to accept for Finlay "May $\frac{or}{and}$ June shipments," and they could not bind him by accepting any thing else. (*Nixon* v. *Palmer*, 4 Seld. 398 ; *East India Co.* v. *Hensley*, 1 Esp. 11 ; *Rossiter* v. *Rossiter*, 8 Wend. 498.) Pay-

ment by Kleinworth, Cohen & Co. of D. K. Porter & Co.'s drafts was payment to the defendants. (*Blackman* v. *Thomas*, 28 N. Y. 67.) The defendants, in using that letter of credit, could not put the plaintiffs in any other or less advantageous position as to the merchandise, than they would have been in had it been used for Finlay's purchase. (*Atlantic Dry Dock Co.* v. *Leavitt*, 50 Barb. 135 ; *Hendricks* v. *Judah*, 2 Caines, 25 ; *Bartlett* v. *Crozier*, 17 N. Y. 439 ; *Frost* v. *Ins. Co.*, 5 Denio, 154 ; Abbott on Shipping [5th ed.], 286 ; *Lucas* v. *Trockells*, 1 Cl. & F. 457.) The plaintiffs, therefore, received, and were entitled to receive, the goods as commission merchants, as that was the capacity, or relation, in which they issued the credit ; and that credit attracted to it, when used, the goods shipped pursuant to its requirements. (*Cayuga Nat. Bk.* v. *Daniels*, 47 N. Y. 636 ; *Farmers, etc., Bk.* v. *Logan*, 74 id. 579 ; *Gihon* v. *Stanton*, 9 id. 481 ; *Brown* v. *McGrau*, 14 Peters, 479 ; *Marfield* v. *Goodhue*, 3 Comst. 62 ; *Hidden* v. *Waldo*, 55 N. Y. 294.) A pledgee can recover a balance of his debt, even though he was in fault in selling the subject of the pledge. (*Duden* v. *Wartzfelder*, 16 Hun, 339 ; *Gourman* v. *Smith*, 81 N. Y. 25.) Defendants, having received the plaintiffs' money, and having furnished merchandise insufficient in value to cover the amount drawn upon the letter of credit, the law implies a promise to pay the deficiency. (*Byxbie* v. *Wood*, 24 N. Y. 610 ; *Gihon* v. *Stanton*, 9 id. 482–3 ; *Pierce* v. *Crafts*, 12 Johns. 90 ; *Tiernan* v. *Jackson*, 5 Peters, 597 ; *Neilson* v. *Blight*, 1 Johns. Cas. 205 ; *Mason* v. *White*, 17 Mass. 560 ; *Fleming* v. *Alter*, 7 S. & R. 295.) It is immaterial what designation is given to the action. (*Briggs* v. *Cent. N. Bk.*, 61 How. Pr. 256 ; *Bradley* v. *Aldrich*, 40 N. Y. 504.) A sufficient tender back of the goods was made. (*Wheelock* v. *Tanner*, 39 N. Y. 486 ; *Sandford* v. *Travers*, 7 Bosw. 508.)

*S. Sidney Smith* for respondents. There was a sufficient tender of performance by defendants and acceptance by plaintiffs. (*Cobb* v. *Hatfield*, 46 N. Y. 533, 536, 537 ; *Goelth* v. *White*,

35 Barb. 76 ; *Dounce* v. *Dows*, 64 N. Y. 416.)    Plaintiffs, by refusing to give up the sugars without being indemnified by afterward entering, dealing with and selling them, accepted them as in compliance with the terms of their contract, and they cannot now claim otherwise. (*Chapman* v. *Morton*, 11 M. & W. 534 ; *Cobb* v. *Hatfield*, 46 N.Y. 533, 536, 537 ; *Street* v. *Blay*, 2 B. & A. 456, 463 ; *Cornwal* v. *Wilson*, 1 Ves. Sr. 509 ; *Masson* v. *Bovet*, 1 Denio, 69 ; *Pomeroy* v. *Shaw*, 2 Daly, 267 ; Benjamin on Sales [1st Am. ed.], 703 ; *Horncastle* v. *Farran*, 3 B. & A. 497 ; *Campbell* v. *Fleming*, 1 A. & E. 40 ; *S. C.*, 3 N. & M. 834 ; *Voorhees* v. *Earl*, 2 Hill, 288 ; *Bogan* v. *Weyer*, 5 id. 389 ; *Van Epps* v. *Harrison*, id. 66 ; *Ross* v. *Litterton*, 6 Hun, 280 ; *Dows* v. *Griswold*, 4 id. 550 ; *Sprague* v. *Baker*, 20 Wend. 61 ; *McCrillis* v. *Carlton*, 37 Vt. 139 ; *Peters* v. *Gooch*, 4 Blackf. [Ind.] 515 ; *Downer* v. *Smith*, 32 Vt. 1 ; *Wheaton* v. *Baker*, 14 Barb. 594 ; *Moyer* v. *Shoemaker*, 5 id. 319 ; *Clark* v. *Baker*, 5 Metc. 452–461 ; *Stevens* v. *Hyde*, 32 Barb. 171, 182 ; *Shields* v. *Petrie*, 2 Sandf. 262–8 ; affirmed, 4 Comst. 122 ; *Mansfield* v. *Trigg*, 113 Mass. 354 ; *Lindsay* v. *Ferguson*, 3 Alb. L. J. 211 ; *Matteawan Co.* v. *Bentley*, 13 Barb. 641–4 ; *Goelth* v. *White*, 35 id. 76 ; *Springer* v. *Dwyer*, 58 id. 189–193 ; 50 N. Y. 19 ; *Clarkson* v. *Cunningham*, 4 Mass. 502 ; *Sinclair* v. *Neill*, 1 Hun, 80, 82 ; *Farrell* v. *Corbett*, 4 id. 128 ; *Milner* v. *Tucker*, 1 C. & P. 15 ; *Kimball* v. *Cunningham*, 4 Mass. 502 ; *S. C.*, 3 Am. Dec. 230 ; (*Clark* v. *Dickson*, 1 E. B. & E. 148.) To make a tender valid, it must be made without the imposition of any condition, restriction or qualification whatever. (*Roosevelt* v. *Bull's Head Bk.*, 45 Barb. 579 ; *Wood* v. *Hitchcock*, 20 Wend. 47 ; *Cashman* v. *Martin*, 50 How. Pr. 337 ; *Hicksville & Cold Spring B . R. R. Co.* v. *L. I. R. R. Co.*, 48 Barb. 355 ; *Wilder* v. *Seeley*, 8 id. 408.) A tender must be kept good. If after it be made the party uses the property in his business, the tender is not valid. (*Stevens* v. *Hyde*, 32 Barb. 171, 182 ; *Roosevelt* v. *Bull's Head Bk.*, 45 id. 579.) An action for money had and received will not lie where the contract has been partially executed ; in such a case the plaintiffs must resort to

their action for damages. (*Stevens* v. *Cushing*, 1 N. H. 17; *S. C.*, 8 Am. Dec. 47; *Peters* v. *Gooch*, 4 Blackf. [Ind.] 515; 1 Chitty's Pl. [16th Am. ed.] 923; *Clarke* v. *Dickson*, 1 E. B. & E. 148; 2 Pars. on Cont. [6th ed.] 679, 680; *McCrillis* v. *Carlton*, 37 Vt. 139; *Wheaton* v. *Baker*, 14 Barb. 594; *Moyer* v. *Shoemaker*, 5 id. 319.) The last letter of credit was a written paper complete in itself, and must be deemed to have super-seded all that went before. (*Hill* v. *S. B. & N. Y. R. R. Co.*, 73 N. Y. 352; *Germania Fire Ins. Co.* v. *Memphis & C. R. R. Co.*, 72 id. 90.) The plaintiffs cannot recover unless they show that the moneys received were received to their use. (2 Chitty on Cont. [11th Am. ed.] 899; 1 Chitty's Pl. [16th Am. ed.] 367; *Sup'rs of Dutchess* v. *Sisson*, 24 Wend. 387; *De Peyster* v. *Winter.* 4 How. Pr. 449.)

Finch, J. Reflection and study have changed our first im-pressions of this case, and led us to the conclusion that the non-suit was improperly granted, and the plaintiffs should have recovered. The facts which seem complicated are not really so, and create no difficulty when accurately understood.

The defendants, Gossler & Co., doing business in New York, entered into an agreement with one Finlay to sell him a quantity of sugar, to be sent from St. Vincent, and to be "May–June shipment." The purchase-money was to be paid at the port of departure, and to accomplish this, Finlay applied to the plaintiffs for a letter of credit to their correspondents in London, through whom the funds could be transferred to St. Vincent, and used to pay for the sugar. The plaintiffs gave Finlay the desired letter of credit, who in turn delivered it to Gossler & Co. as a means of payment for the purchase. By its terms this credit expired, unless used, on June 30. It also required a May or June shipment, and bills of lading to the order of the plaintiffs. The letter of credit harmonized with the contract, and by its express terms would have been un-available for any shipment later than June 30. But at the request of Gossler & Co. a credit by telegraph was substituted in its place, the form and language of which was dictated and

prepared by them. That credit was sent forward. The necessary brevity of the dispatch excluded details, and it contained no prohibition of a use later than June. It is not pretended that the terms of the contract between Gossler & Co. and Finlay were at all changed. It was still a May–June shipment which the latter was to receive, and for which alone the credit was to be used to pay. What had happened was only this: that the form of the telegraphic credit enabled Gossler & Co., or their representatives in St. Vincent, who were to ship the sugar on their behalf, to use the credit after June 30, and for a later shipment. They gained no right to do so, but found in the form of the order an opportunity and a possibility of getting the money upon an unauthorized delivery. That is exactly what they did. June went by without any shipment. The right to utilize the credit upon the contract was gone. The money it represented was no longer Finlay's, unless by his further choice. He ceased to be liable for it under the contract. He had not used the credit so as to become liable, and no one was authorized to use it for him upon a new and different contract. The money, therefore, on the morning of July 1 was not Finlay's, and could not be applied on a succeeding shipment on his account. It was solely and only the money of the plaintiffs, to be returned to them by the cancellation of an unused credit, and for which no lawful use remained, since the contract for which it was issued had expired, and was dead. For it is not to be doubted that Finlay was not bound to accept or pay for sugars shipped in July. (*Russell* v. *Nicoll,* 3 Wend. 112; *Catlin* v. *Tobias,* 26 N. Y. 217; *Rouse* v. *Lewis,* 2 Keyes, 352.) Now Gossler & Co. were the vendors of the sugars, and the letter of credit when made was delivered upon their direction, and when paid was a payment to them. They dealt as principals, disclosing no agency, and indicating the existence of none. The written contract shows them to have been the vendors, and no pretense of any agency appears in the transaction until one of the defendants was sworn on the trial. While he testifies that they were not the owners in fact of the sugars, they must be treated as such as between themselves and

Finlay on the one hand, and the plaintiffs on the other, since to neither did they assume any other position than that of owners and principals. The letter of credit was delivered to them; the telegraphic credit was sent upon their order and to their appointees; and the latter, in dealing with it, must be deemed the agents of the defendants, acting on their behalf and responsibility. What then did these agents or appointees do with the funds placed within their reach? They appropriated them to a July shipment. Through them Gossler & Co. took the funds in payment for July sugars. In substance they took the money of plaintiffs upon a forced loan or advance, without right or lawful authority, and shipped to the plaintiffs the sugars with bills of lading to their order. The transaction at this point was one of two things. Finlay might accept the sugars notwithstanding the delay. He might waive the provision of the contract which required a June shipment. If he did, the appointees of Gossler & Co. were rightfully in possession of the money as paid upon the latter's contract of sale. But if he did not, if he refused to accept, and stood upon the terms of the contract, then Gossler & Co. were in the position of appropriating plaintiffs' money as a loan or advance upon the faith of the sugars shipped to the plaintiffs to sell on commission. Putting one side Finlay's contract as no longer existing, the agents and appointees of Gossler & Co. could not take the money as Finlay's, or under his contract. They could only take it as plaintiffs' money, and as an advance upon a consignment of the sugars to them to be sold on commission. With the end of Finlay's contract the facts raised a new contract, and created a new relation between Gossler & Co. and the plaintiffs, upon which the rights of the latter can rest. Two cases to which our attention is specially directed by the learned counsel of the respondents tend to sustain the view we have thus taken of the relation of the parties. In *Cornwal* v. *Wilson* (1 Vesey, Sr., 509), the defendant, a merchant in London, sent orders to the plaintiffs in Riga to buy for him as his factors, a quantity of hemp at a fixed and limited price. The plaintiffs exceeded their authority and bought at a larger price. On the

arrival of the hemp the defendant refused to receive it under his contract, but did take it and dispose of it. Lord HARDWICKE said: "That a merchant here refusing goods sent over by his factor in a foreign country, who exceeded the authority, having advanced and paid his money on these goods, may be considered as having an interest as a pledge, and may act thereon as a factor for that person, who broke his orders." The chancellor then held that defendants did not act as factors, although they might have done so, because instead of selling the hemp as factors and in the customary way, they took the risk of transporting the hemp to Portsmouth, and selling it there. Upon the doctrine of this case, if the sugars had been shipped to Finlay who had made advances, the latter might have refused them under the contract, but received them, and sold them on commission as factor of the shippers. Much stronger is the case as applied to the present plaintiffs. They had made no contract of purchase. Finlay had refused to receive the property, and forbidden them to accept it for him. They could not, and they did not, receive the sugars on his behalf. They expressly so declared. They could receive them, however, as factors for Gossler & Co., and to sell on commission. Just that they did. They explained their attitude carefully. They gave Gossler & Co. in their character of shippers and owners opportunity to take the whole cargo, and sell it themselves upon repaying the advances. Upon their refusal the plaintiffs sold the goods in the usual and ordinary way, as commission merchants, applied the proceeds upon the advances, and now call upon the shippers for the unpaid balance. The other case referred to is that of *Chapman* v. *Morton* (11 M. & W. Exch. 534). The sale by the purchaser who repudiated the contract in words was held on all the facts to have nullified his refusal. Lord ABINGER admitted that the act of sale was in itself equivocal. PARKE, B., stated its equivocal character more strongly, saying: "There might be circumstances under which he might have disposed of the goods as agent of the vendor; but it might be also that he meant to take the property, having recourse to his cross remedy." In the present case the sale by

the plaintiffs was in no respect an equivocal act. Finlay had refused to accept; and they had refused to accept for him. No contract of sale and purchase remained. The omission to ship in June authorized Finlay to treat it as rescinded. (*Seipel* v. *Int. Life Ins. & Tel. Co.*, 84 Penn. St. 47; *Graves* v. *White*, 87 N. Y. 463.) Nothing remained except the facts of the advances made by plaintiffs *in invitum* and against their wish, the shipment of sugars to them as commission merchants having a lien upon the proceeds for their reimbursement, and their sale accordingly.

The error of the courts below thus becomes apparent. Their conclusion went upon the ground that plaintiffs received and sold the goods as agents of Finlay, and, therefore, they could not rescind the contract without an unconditional offer to restore the sugars. We think the contract was already rescinded by the act of the defendants; that the plaintiffs did not receive the goods as agents of Finlay, since that had become impossible, and was expressly refused; and that they did receive them upon commission, and upon a new contract of that character between themselves and the defendants, springing up from and growing out of the facts and circumstances of the shipment and advances.

It follows from these views that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.