JOSEPH A. IASIGI, Appellant, *v.* CLARA ROSENSTEIN, Respondent.

*Contract to deliver goods by a particular vessel — not performed where part of the voyage is made in another vessel — evidence of a custom to transship goods, inadmissible.*

Upon the trial of an action brought to recover the price of 1,100 bags of Smyrna canary seed which Joseph A. Iasigi had contracted with Clara Rosenstein to ship in March, 1887, on the steamer "Aleppo," from Turkey, it appeared that Rosenstein had refused to accept the seed upon the ground that, although the seed was shipped from Turkey by the steamer "Aleppo," it was conveyed by her only to Liverpool, where it was reshipped and brought to New York, the port of destination, by the steamer "Aurania."

Upon an appeal by the plaintiff from a judgment dismissing the complaint:

*Held,* that a contract to deliver seed in New York by the steamer "Aleppo" was not performed by its delivery there through the steamer "Aurania"

That, as the contract was plain and unambiguous, evidence of an invariable custom to transship goods from Turkey for New York, at Liverpool, and that there was no direct line from Turkey to New York, was inadmissible.

That the fact that the defendant did not show any damages resulting from the change in the manner of shipment was not material.

That the mode of shipment was not necessarily an immaterial accessory of the contract, and might have an important bearing, *e. g.,* upon the question of the insurance of the cargo.

APPEAL by the plaintiff Joseph A. Iasigi from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 12th day of May, 1892, dismissing the complaint, with costs, after a trial at the New York Circuit before the court and a jury.

Upon the trial of the action, which was brought to recover the price of certain goods, it appeared that the contracts between the parties were made by a broker named George M. Black. It was admitted by the pleadings that Joseph A. Iasigi did business under the name of Iasigi & Co., and that Clara Rosenstein did business under the name of C. Rosenstein & Co., and, further, that the contracts were as follows:

"NEW YORK, *March* 14–87.

"Sold for ℀ Messrs. Iasigi & Co., of Boston, to Mess'rs. C. Rosenstein & Co. Five hundred bags good merchantable quality Smyrna Canary Seed, March Steamer shipment from Turkey, at Two & three-quarter (2¾) cents per lb. gross weight for net, less 1 p. c. for cash in 10 days from date of delivery on dock in New York. No tare — no charge for bags. Goods to be taken from dock on arrival of Steamer when ready for delivery. Damaged bags, if any, to be taken at fair allowance. Name of Steamer to be given soon as known.

"GEORGE M. BLACK, *Broker,*

"60 *New St.*"

Indorsed: "Accepted, New York, March 16th, 1887. C. Rosenstein & Co."

Second indorsement: "Name of Steamer reported, 'Aleppo.' No arrival, no sale—New York, April 22–87. George M. Black, Broker."

" NEW YORK, *March* 25–87.

" Sold for ⅌ Messrs. Iasigi & Co., of Boston, to Messrs. C. Rosenstein & Co. Five hundred bags good merchantable quality Smyrna Canary Seed, March Steamer shipment from Turkey, at two and three-quarter (2 3-4) cents per lb. gross weight for net, less 1 p. c. for cash in 10 days from date of delivery on dock in New York. No tare, no charge for bags. Goods to be taken from dock on arrival of steamer when ready for delivery. Damaged bags, if any, to be taken at fair allowance. Name of steamer to be given as soon as known. No arrival, no sale.

" GEORGE M. BLACK, *Broker*,

" 60 *New St.*"

" March 30, 1887. Name of steamer reported 'Aleppo,' from Rodosto. G. M. B."

Indorsed : "Accepted, New York, March 31st, 1887. C. Rosenstein & Co."

" NEW YORK, *April* 5, 1887.

" Sold for ⅌ Messrs. Iasigi & Co., of Boston, to Messrs. C. Rosenstein & Co. One hundred bags good merchantable quality Smyrna Canary Seed, to arrive March shipm't per Steamer 'Aleppo,' from Rodosto, at two and three-quarters ($2\frac{3}{4}$) cents per lb. gross weight for net, less 1 p. c. for cash in 10 days from date of delivery on dock in New York. No tare, no charge for bags. Damaged bags, if any, to be taken at fair allowance. Goods to be taken from dock on arrival of Steamer when ready for delivery. No arrival, no sale.

" GEORGE M. BLACK, *Broker*,

" 60 *New Street.*"

Indorsed : " Accepted, New York, April 6th, 1887. C. Rosenstein & Co."

*David Keane*, for the appellant.

*H. Applington*, for the respondent.

O'BRIEN, J. :

No order having been entered denying a motion for a new trial, and no request having been made by the plaintiff to go to the jury, no question of fact is present for review, and the only exceptions

before the court are those taken by plaintiff to the rulings refusing to admit evidence with respect to the custom prevailing in regard to the shipment of goods from Turkey to New York.

The parties to this action entered into three contracts of substantially the same tenor, but of different dates, for the purchase of 1,100 bags of Smyrna canary seed, to be shipped in March, 1887, on the steamer *Aleppo* from Turkey. The ground upon which the seed was rejected, and on which at the trial the complaint was dismissed, was the insistence of defendant that the contracts required a direct shipment from Turkey to New York on the steamer *Aleppo*, while the evidence shows that, though the seed was shipped from Rodosto in Turkey on *the steamer Aleppo*, the latter conveyed the cargo no further than Liverpool, where the seed contracted for was reshipped and arrived in New York on the steamer *Aurania*.

The question, therefore, is, whether a contract such as was here made between the parties, which provided that the seed was " to arrive March shipment per steamer ' Aleppo' from Rodosto," has been fulfilled by a delivery in the city of New York by the steamer *Aurania*.

It is insisted by appellant that the contracts do not expressly say that the shipment should be to New York on the *Aleppo*, but merely on the *Aleppo* from Turkey ; that the intention of the parties was that the shipment should be made from Turkey on the *Aleppo*, but not that the *Aleppo* should come to New York, the parties having known that such was not the custom or usage. To establish a custom and usage tending to show that there was no direct steamer coming from Turkey to New York, and that the invariable custom and usage was to transship at Liverpool, the plaintiff offered evidence which, upon objection, was excluded, and the exception to the exclusion of such evidence presents the questions raised by this appeal.

It must be regarded as settled law that where contracts are plain, unambiguous and easily understood, no proof of custom or evidence extrinsic of the contracts themselves can be resorted to, it being the duty of the court to give to the language employed its ordinary and reasonable meaning. Another well-recognized rule of construction is, that no evidence of custom or usage is competent to vary or contradict the express terms of a written contract ; resort to custom and usage being permissible only where it is necessary to supply an

omission or annex an incident entirely consistent with the written terms of the contract. As stated by Starkey on Evidence, page 710: "In many instances too, evidence of custom and usage is admissible for the purpose of annexing incidents to the terms of a written instrument concerning which the instrument is silent, although if any condition or term in the contract is necessarily repugnant to or inconsistent with the custom, the latter is excluded." It is true that merchants contract ordinarily with reference to established customs and usages in their particular business; and where the contract is not in writing, or, if in writing, an ambiguity exists therein, or the contract is silent as to some incident connected therewith, it is competent to have resort to custom or usage for the purpose of showing what the contract made between the parties was. Notwithstanding, however, the existence of customs and usages in a trade or business, it is perfectly competent for the parties to enter into a written contract, whose terms are inconsistent with such usages. And when the terms are clear and unambiguous, and by giving to the language employed its ordinary and well-defined meaning but one construction is open, it is clear that the terms of the agreement cannot be impaired or destroyed by evidence extrinsic of the contract relating to custom or usage.

We think that the contract here, fairly construed, regard being had to the language used, was one. by which the plaintiff contracted to sell the seed to arrive by the steamer *Aleppo* from Turkey to New York; and that evidence tending to show a custom of the trade, or that vessels never came directly from Turkey to New York, would be permitting the plaintiff to interpolate in the contract terms which would change the construction that the language used would require us to give to it.

It is insisted by appellant that whether the seed came from Turkey directly by the *Aleppo* or was transshipped at Liverpool to another vessel is unimportant and should not have attached to it a weight sufficient to justify a rejection by the defendant of the contract. Our attention is called to the fact that the answer does not allege that this circumstance of the change was of any consequence, and that it does not state any facts to show that it was of any importance, pecuniarily or otherwise, to the defendant; it being conceded, moreover, that in all other respects the seed tendered and

rejected complied fully with the description contained in the express terms of the contract. We are not at liberty, however, to determine the relative importance of terms in a contract, nor have we the power to reject any provision of a contract which the parties themselves have inserted and which they may have deemed important; nor in an action such as this was it necessary for the defendant to show in what respect he was injured by such change.

The plaintiff brought this action to recover damages for a breach of the contract, and before a recovery could be had in such an action it was essential for him to show that he had fully complied with all the terms and conditions of the contract to be performed on his part.

The question, however, as to whether the manner of shipment is important has been passed upon adversely to the position assumed by the appellant in many cases, and it has been held that the mode of shipment is not an immaterial or unimportant accessory "affecting only the method of performance, but is of the substance of the agreement, because identifying its subject-matter." (*Bidwell* v. *Overton*, 26 Abb. N. C., 402; see, also, Benjamin on Sales, §§ 588, 600; *Hill* v. *Blake*, 97 N. Y., 216; *Welsh* v. *Gossler*, 89 id., 540.) Here the means of identifying the seed the defendant agreed to purchase was the arrival of the *Aleppo* with such seed on board; and seed even of the same quantity and quality brought to New York by any other steamer than the *Aleppo* would certainly not be the seed the defendant contracted to purchase from the plaintiff, the words as to the mode of shipment being part of the description of the subject-matter. (Benjamin on Sales, § 588.) "In sales of goods 'to arrive,' it is quite a usual condition that the vendor shall give notice of the name of the ship on which the goods are expected as soon as it becomes known to him, and a strict compliance with the promise is a condition precedent to his right to enforce the contract." Certainly, the failure to give the name of the vessel in a case where the goods, in all other respects, answer the description of a contract, is no more important than a provision in the contract relating to the mode of shipment. If we were at liberty to determine their relative importance, we should say that more was to be attached to the mode of shipment than to the name of the vessel; because, while both were intended for the purpose of identifying the property, the mode of shipment might have, in case of loss, an important bearing

upon the question of the insurance upon the cargo, and a change in the mode of shipment might result in a forfeiture of the policy. In this case, the name of the vessel having been ascertained to be the *Aleppo*, and having in the last contract expressly agreed to a shipment from Turkey by the *Aleppo*, that, had the defendant taken out a policy of insurance covering any interest which he might have in the seed to arrive, under the usual terms and conditions of such a policy, unless arrangements with the insurance company were made for transshipment at Liverpool, the policy could not have been enforced if a loss had occurred to the goods during their transit from Liverpool to New York. Apart, therefore, from the method of shipment being a necessary part of the description, we have suggested one way in which we think the defendant might have been injuriously affected, and in respect to which the method of shipment would be an important term or provision of the contract. It is true that under the contract here, providing " no arrival, no sale," the defendant might have no insurable interest. We are discussing, however, the bearing which the presence of such a condition, in the absence of express stipulations in the contract to the contrary, would have upon the rights of the parties.

It is unnecessary, however, to further discuss the question, it being sufficient for this appeal to say that a fair and reasonable construction of the contracts having required a direct shipment from Turkey to New York on the *Aleppo*, it could only be fulfilled by the arrival of such vessel in New York. Such construction being clearly and plainly indicated by the language used in the contracts, it was not competent to resort to evidence of custom or usage to vary their terms. We think, therefore, that the learned trial judge properly excluded such evidence of custom, and that, in the absence of such evidence, the plaintiff having failed to show a compliance with the term in regard to the mode of shipment from Turkey to New York, the complaint was properly dismissed.

The judgment should, therefore, be affirmed, with costs.

Van Brunt, P. J., concurred.

Patterson, J.:

I concur for the reason that the fair construction of the contracts is that the goods were to be sent from Turkey to New York by the

steamer *Aleppo*. In the first and second contracts there is a fair implication that the parties contracted for a continuous transit by one vessel. The name of the steamer was to be subsequently reported and the contracts provided for removal of the goods from the dock on arrival of that steamer. In the third contract the steamer is named and the same provision for removal of the goods on arrival of the steamer is contained in it. If there were such an usage as the plaintiffs claim existed, the terms of the contract seem to imply that the parties specially agreed without reference to it.

Judgment affirmed, with costs.