WILLIAM T. CUNNINGHAM et al., Appellants, *v.* BENJAMIN F. JUDSON, Respondent.

The parties entered into a contract by which plaintiffs agreed to sell and defendant to purchase about five hundred tons, of " No. 1 Eglinton Scotch pig iron for shipment in March, 1880, from Great Britain to New York, by sail or steam vessels at seller's option, deliverable *ex* vessel on arrival." Plaintiffs shipped no iron in March, but in April they secured the option to purchase five hundred tons of iron of the kind specified, shipped by another party in March from Great Britain and then on its way

to New York. When it arrived plaintiffs notified defendant that his iron had arrived and offered to deliver it under the contract. Defendant refused to accept it or to give any instructions in regard to unloading; plaintiffs subsequently made a contract for the purchase of the iron. It is the custom in the port of New York, when iron is unloaded, for the custom-house weigher to weigh and the buyer who has purchased "*ex vessel*" must take it as it passes from the vessel. This iron was so weighed and then warehoused. Plaintiffs notified defendant of the fact and sent to them the warehouse receipt and weigher's return, which papers defendant returned and declined to receive the iron under the contract on the ground that it was not shipped by plaintiffs. In an action to recover damages for breach of the contract, *held*, that the contract did not limit plaintiffs to iron shipped by them, and the reason for the refusal to accept was, therefore, untenable.

While the seller is limited to the description of the goods in such a contract and the buyer is not bound if there is a variance, even in a stipulation entirely unimportant, a liberal construction of the language used will not be resorted to, to import into the contract such a stipulation, nor will it be considered as included if there is a reasonable doubt as to the intent of the parties to include it.

Also *held*, that there was a sufficient offer of performance on the part of plaintiffs to put defendant in default.

*Cunningham* v. *Judson* (30 Hun, 63), reversed.

(Argued June 25, 1885 ; decided October 13, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made June 1, 1883, which affirmed a judgment in favor of defendant, entered upon a verdict. (Reported below 30 Hun, 63.)

This action was brought to recover damages for an alleged breach of a contract of purchase and sale.

On the 20th day of January, 1880, the plaintiffs, who were dealers in iron, having offices in New York and Philadelphia, contracted to sell iron to the defendant, who was a dealer in iron in New York, through a bought-and-sold note, of which the following is a copy :

"NEW YORK, *January* 20, 1880.

"Bought of Messrs. Winthrop, Cunningham & Sons for account of Mr. B. F. Judson, about five hundred tons No. 1 'Eglinton' Scotch pig iron, for shipment in March, 1880,

from Great Britain to New York by sail or steam vessels, at seller's option, deliverable '*ex vessels,*' on arrival at this port, at thirty-one dollars and seventy-five cents per ton (of 2,240 lbs.), payable by buyer's notes to his own order, with interest at six per cent per annum, at ninety days from delivery of U. S. weigher's returns, which are to decide quantities to be paid for. Interest for three days' grace to be included.

"T. D. HAZARD, *Broker.*"

Across the face is written "Accepted, B. F. Judson."

The plaintiffs did not ship the iron, but in the latter part of April they entered into negotiations with E. S. Wheeler & Co. for the purchase from them of five hundred tons of iron of the kind and quality specified which that firm had shipped on the bark *Jennie Harkness*, from Glasgow, March 26, and secured the option to purchase the same. It arrived at the port of New York May 7, on which day the plaintiffs telegraphed to defendant from Philadelphia, notifying him that his iron had arrived, and asking him whether they should bond or pay duties, and offering to substitute other iron shipped later on other vessels if he desired. The next day they wrote him saying they had received no reply to their telegram, and further: "We would like to know whether you would prefer taking iron now here, or from the vessels named, not yet arrived. Kindly let us know at your earliest convenience and oblige." On the 10th of May the defendant wrote the plaintiffs as follows: "Gentlemen — I am in receipt of your dispatch of the 7th inst., in which you remark your five hundred Eglinton March shipment has arrived. If so, please state when it was shipped and by what vessel and when it arrived and where it is. Upon receipt of this information I shall be prepared to reply to your other inquiries." On the 12th of May one of the plaintiffs called upon the defendant at his office, and he testifies that he then tendered him the delivery order for the iron and offered to deliver the iron to him, and that he declined to take it, and he further testified: "He said we should have advised him of this vessel being in

port and that we had not any iron on board of it. I told him that we had iron on board of her and we owned iron on board of her, and we offered to deliver it to him then and there, and he declined to take it." The defendant in his testimony denied some of the facts thus testified to, but admitted that some kind of an offer was made on that day. On the 13th day of May the plaintiffs telegraphed to defendant from Philadelphia as follows: " Five hundred iron now in port, arrival of which was promptly announced to you, were loaded in March. Vessel sailed about March 25th to 29th. Bills lading, likewise dated March. Our effort to accommodate being so coldly responded to by you, we feel compelled to withdraw option later deliveries unless you accept latter by telegraph before three o'clock to-day. Cannot longer delay disposition spot lot." On the same day they wrote him as follows: " We are at a loss to understand your apparent indisposition to instruct us concerning the disposition of the iron. We have now made repeated efforts by telegraph, by mail and in person, and if any expenses occur through your singular tardiness in answering our several communications, we must, of course, look to you for payment of same. We will be glad to receive your instructions about five hundred tons immediately, as they will be landing within a few days probably, and in default of hearing from you we shall store the iron for your account, and make a further tender of it as soon as weighers' returns are obtainable." The next day the defendant wrote the plaintiffs as follows: "All indications are that you made no shipment of iron within the contract, and to meet its terms. You gave me no notice of shipment as is usual in such cases. You have furnished me with no order for iron owned by you to be delivered *ex vessel.* I decline your proposals which are not within the contract."

On the 17th, 18th and 19th days of May, the plaintiffs wrote the defendant the following three letters successively: (1) " We hereby tender you five hundred tons of No. 1 Eglinton Scotch pig iron in fulfillment of our contract of January 20, 1880. This iron is now on the bark *Jennie Harkness*, lying at Erie basin stores. Shall we land it on the wharf, or do you wish it

delivered in lighters? Please notify us at once, as the vessel is discharging her cargo, and if there is any delay it may become necessary to store it." (2) " Referring to our respects of yesterday, we beg to notify you that the *Jennie Harkness* is about ready to land your iron, and we will be glad to have your instructions at once. Bearer of this will await your answer." (3) " Concerning our respects of yesterday, we now notify you that, as you make no reply to our letters of 17th and 18th inst., thus depriving us of your instructions as to disposition of the iron, we shall warehouse it for your account and at your expense. When the lot is warehoused, we shall make out bill and present same to you with proper documents and demand settlement. If you refuse this, we shall sell the iron for your account as our legal counsel may direct, and sue you for any deficiency resulting therefrom as against the contract price. This is any thing but handsome treatment from you, particularly as it is but a short time since we delivered you five hundred tons iron when the market rate was $10 per ton above the price you paid us." To the last letter there was a postscript as follows: " You well know that the vessel is discharging cargo rapidly, and that the crowded condition of the piers necessitates prompt removal when landed. Of this we have notified you repeatedly, and in the absence of any instructions from you, we are forced to warehouse the iron for your account and at your expense." On the 20th day of May the defendant wrote to the plaintiffs as follows: " Yours of the 19th inst. received, and do not sanction any of your proceedings."

On the 14th day of May the plaintiffs made a formal contract with E. S. Wheeler & Co. for the purchase of the iron at $20.50 per ton by a bought-and-sold note, which, among other things, provided, " Negotiable storage receipt to be taken out for the five hundred tons delivered after this date whenever iron is stored in the name of E. S. Wheeler & Co., and iron to be paid for when the bill United States weighers' returns and negotiable receipt, duly indorsed, is delivered, and docu-

ments not to pass out of seller's hands until paid for," and between that date and June 1st they paid in full for the same.

It is the custom at the port of New York when iron is taken from a vessel for the custom-house weigher to weigh it, and then the buyer who has bought it *ex vessel* must take it there as it passes from the weigher. This iron was so weighed, and then on or before June 1 it was put in a warehouse upon the pier, the custom-house dues having been paid. The storage receipt for the iron was dated May 22d, and the weigher's return for exactly five hundred tons May 25th.

On the 1st day of June the plaintiffs wrote a letter to defendant which was received by him the next day, as follows : " The delivery of the five hundred tons iron purchased by you under contract dated January 20, 1880, is now complete in every respect. We hand you herewith (per registered post) the bill, United States weighers' returns and negotiable warehouse receipt duly indorsed in your favor, and we once more request you to forward us your notes for the amount of our bill at once as per terms of contract bearing your acceptance. As the terms of sale have been complied with, we trust you will settle the matter amicably." To this letter the defendant replied on the third day of June, as follows : " Received yesterday by registered post storehouse receipt, invoice of iron and certificate of weighers dock-book together with your letter dated June 1st, 1880. I decline to receive the same in fulfillment of your contract of January 20, 1880. You shipped no iron of the character agreed for during the month of March. The iron was imported and ordered by other parties who had already bought the same, and was never tendered me " *ex ship.*" After your failure to comply in reasonable time with your contract I purchased five hundred tons and have supplied myself. No order for the delivery has been tendered me prior to this date, and reserving to myself all legal rights resulting from your failure to comply with your contract I must decline further correspondence on this subject." To this letter there was the following postscript, " I return the storehouse receipt and weighers' certificate." On the 15th day of June the plain-

tiffs wrote the defendant as follows :   " We are in receipt of
yours of the third returning our bill United States weighers'
returns and negotiable storage receipt (indorsed in your favor)
for the five hundred tons Eglinton iron stored for your account,
*ex Jennie Harkness*, and note that you decline receiving the
iron as per contract.   We shall now sell this iron for your ac-
count charging you with any difference that may arise to our
disfavor.   As you decline farther correspondence in the matter
we do not now correct some of the misstatements in your let-
ter;" and on the 17th day of July they again wrote him a
letter as follows :   " We beg to advise you that after repeated
efforts assisted by several New York brokers to obtain the
highest possible price, we have sold your iron — five hundred
tons No. 1 Eglinton Scotch pig iron — *ex Jennie Harkness*, to
Messrs. T. J. Pope & Bros. N. Y., at $20 per ton, and in due
time will render you a statement showing the balance due us
on the sale of your iron."

In October, 1880, this action was commenced, and the fore-
going facts were proved on the trial.   At the close of the evi-
dence, the trial judge ruled that there were two questions for
the jury, whether the plaintiffs had the iron, and whether they
tendered it to the defendant, and charged the jury among
other things as matter of law " that there was no legal tender
or refusal to accept which would entitle the plaintiff to recover
before the first of June;"   "that the letter of May 17th does
not of itself amount to a legal tender ;"   " that a person can-
not sell that which he does not own ;"   " that before the de-
fendant could be put in the wrong, the sellers must perform
all of the conditions which by the terms of the contract they
had to perform ;"   " that the plaintiffs were bound before they
could put the defendant in default to put him in possession of
the weight of the iron and furnish him with proper writings
or documents which would authorize him to take it away,"
and to all these portions of the charge the plaintiffs excepted.
The judge also, at the request of the plaintiffs, charged the jury
that " an absolute refusal to receive goods is a waiver of spe-
cific objections to the tender which are not stated, and which

if stated might be obviated;" that "if before or at the time of the completion of the contract the defendant openly and avowedly refused to perform on his part, or declared his intention not to perform at all events, a tender of performance on the part of the plaintiffs was waived," and that "the fact that the plaintiffs did not own the iron when it was shipped and that it was not consigned to them is no defense to the suit," except that he qualified the last request by adding "provided that they had acquired title before the tender of June 1st was made." The judge refused to charge the following requests made on the part of the plaintiffs: "If the jury believe that the defendant, at the interview between Mr. Cunningham and himself (on May 12th) did not object to the offer testified to having been made by Mr. Cunningham on the ground that no delivery order was tendered him, he cannot now avail himself of the want of such tender as a defense;" that "the letters from the plaintiffs to the defendant, dated respectively May 17th, 18th and 19th, especially that of the 17th, constituted a sufficient offer of performance on the part of the plaintiffs. The letter of the defendant of May 20th was an absolute refusal and dispensed with the necessity of a formal tender of a delivery order;" that "if the jury believe that in the ordinary course of business it was impractical to leave the iron along-side the *Jennie Harkness*, longer than it was left, and the refusal contained in defendant's letter of May 20th, and his omission to take the iron away, caused its removal to the yard on the pier, he cannot object to the tender made him on June 1st on the ground that the iron was then in the yard and not along-side the vessel," and to these refusals the plaintiffs excepted. The jury rendered a verdict in favor of the defendant. Upon plaintiffs' appeal to the General Term the judgment entered upon the verdict was affirmed upon the sole ground that the plaintiffs did not ship the iron from Great Britain.

*Everett P. Wheeler* for appellants. The judge at Circuit did not err in charging that the fact that the plaintiffs did not own the iron when it was shipped, and that it was not con-

signed to them, is no defense to the suit. (*Dressel* v. *Jordan,* 104 Mass. 407; *Dyker* v. *Townsend,* 24 N. Y. 57; *Andrew* v. *Newcomb,* 32 id. 417; *Frazer* v. *Harbeck,* 4 Robt. 179–180.) Where there is no ambiguity in the terms of a contract, the court will not insert by construction a clause not expressed. (Broom's Leg. Maxims, 477.) All the defendant could reasonably require is that the plaintiff should have owned the iron at the time of tender. (*Hill* v. *Blake,* 97 N. Y. 216; 1 Pars. on Cont. 556; *Hibblethwaite* v. *McMorine,* 5 M. & W. 462; *Fischel* v. *Scott,* 15 C. B. 69; *Pennock* v. *Coe,* 23 How. [U. S.] 117.) The evidence already stated was sufficient to establish an offer of performance, and a refusal to accept in May. (Benjamin on Sales, § 760; *Duffy* v. *O'Donovan,* 46 N. Y. 223; *Crary* v. *Smith,* 2 id. 60; *Woolmer* v. *Hill,* 93 id. 576; *Dustan* v. *McAndrew,* 10 Bosw. 130; 44 N. Y. 72.) Contracts for the delivery of goods are to be construed, so far as the manner of delivery is concerned, with reference to the usages of the port of delivery and the exigencies of business. (*Richmond* v. *U. S. Co.,* 87 N. Y. 240.) An objection to a tender which might be obviated is waived if not taken at the time the tender is made. (*Marine Bk.* v. *Fiske,* 71 N. Y. 353; *Carmen* v. *Pultz,* 21 id. 547; *Stokes* v. *Pecknagle,* 38 N. Y. Supr. 368.) It was defendant's duty to go and get the iron. (2 Kent's Com. 506; *Slingerland* v. *Morse,* 8 Johns. 473; *Goodwin* v. *Holbrook,* 4 Wend. 377.) The defendant having failed to take the iron from the pier, and having refused the offer of performance made before the iron was stored, cannot object to the tender made June 1st on the ground that the iron was in the yard, and not alongside the vessel. Delivery on the vessel was waived. (*Hayden* v. *De-Mets,* 53 N. Y. 426; *Dunlop* v. *Hunting,* 2 Denio, 643; *Paine* v. *Brown,* 37 N. Y. 228.) In this case it was proper to show what " *ex-vessel* " meant. But evidence of usage is never admissible to add to a contract a clause not contained in it. (*Silberman* v. *Clark,* 96 N. Y. 522; *Bank* v. *Bissell,* 72 id. 615; *Lawrence* v. *Maxwell,* 53 id. 19; *Groat* v. *Gile,* 51 id. 431; *Simmons* v. *Law,* 4 Abb. Ct. App. Dec. 241.)

*Thomas Darlington* for respondent.    Immaterial evidence admitted under exception is no ground for reversal.    (*People* v. *Shorter*, 2 Comst. 193; *Onondaga Ins. Co.* v. *Minard*, id. 98.)    Evidence of a usage or custom of trade is frequently admitted to annex unexpressed incidents to contracts.    (*Dara* v. *Fiedler*, 12 N. Y. 40; *Fuller* v. *Robinson*, 86 id. 308; *Vail* v. *Rice*, 5 id. 158; *Walls* v. *Bailey*, 49 id. 464; *Johnson* v. *De Peyster*, 50 id. 666.)    A request to charge which is erroneous in part is entirely ineffectual.    (*Hodges* v. *Cooper*, 43 N. Y. 216.)    When a contract is executory, the contract carries with it an obligation that the article shall be merchantable, at least of medium quality or goodness.    If it comes short of this, the vendee may rescind the contract and return the article after he has had a reasonable time to inspect it.    The rule of *caveat venditor* and not *caveat emptor* applies.    (*Hargous* v. *Stone*, 5 N. Y. 73.)    It was the duty of the plaintiffs to tender iron of the character and quality called for by the contract. (*Shields* v. *Pettee*, 4 N. Y. 124; *Brown* v. *Weber*, 38 id. 187; *Paige* v. *Ott*, 5 Den. 406.)    He is only excused from this duty of complete performance by the act of God rendering it impossible, or the act of the law rendering it illegal, or the act of the other party rendering it unnecessary.    (*Nelson* v. *Plimpton F. P. Co.*, 55 N. Y. 480; *Dunham* v. *Pettee*, 8 id. 508; *Lester* v. *Jewett*, 11 id. 453.)    Even though a request to charge is correct in form, the court may properly refuse to charge it, if, as applied to the case, it was mere abstraction.    (*Priebe* v. *Kellogg B. Co.*, 77 N. Y. 597.)    The exceptions fail because they were irrelevant and inapplicable.    (*Kissinger* v. *N. Y. & H. R. R. Co.*, 56 N. Y. 538; *Shufflin* v. *People*, 62 id. 231.)    Upon appeal the appellate court will not regard exceptions which ought not to affect the merits.    (*Vermilyea* v. *Palmer*, 52 N. Y. 471.)    As the uncontradicted evidence shows that the plaintiffs shipped no iron from Great Britain in the month of March, 1880, the defendant was under no obligations to accept any other.    (*Hill* v. *Blake*, 97 N. Y. 216; *Welsh* v. *Grossler*, 89 id. 540.)

EARL, J.   If the proper construction of the contract be-
tween these parties entitled the defendant to receive iron
shipped by the plaintiffs from Great Britain, then the judg-
ment is right.   In that event the description of the iron pur-
chased required that it should be iron shipped by the plaintiffs,
and however unimportant that circumstance might be, it en-
tered into the contract of the parties, and the defendant could
not be required to take any other iron.   (*Hill* v. *Blake*, 97 N.
Y. 216.)   But as that circumstance is unimportant, it should
not be imported into the contract by a liberal construction of
the language used; nor should it be put there if there is a
reasonable doubt whether the parties intended it to be included
in the description of the iron in reference to which they were
dealing.   The iron was to be No. 1 Eglinton Scotch pig iron,
and it was to be shipped in March from Great Britain to New
York.   These were material stipulations and sufficiently de-
scribed the iron.   It was immaterial to the defendant whether
it was shipped by a sailing or a steam vessel, and hence the
option was given to the plaintiffs to deliver iron shipped by the
one or the other.   The words " for shipment " must mean the
same as " shipped " and thus we have the phrase " shipped in
March, 1880, from Great Britain to New York, by steam or sail
vessels at sellers' option."   This may mean that the sellers
were to have the option to deliver iron shipped by *them* by sail
or steam, or it may mean that they were to have the option to
deliver iron shipped by either method in the month named.
We think the latter meaning the most probable and reasonable
and therefore adopt it.

This iron, therefore, which was shipped from Great Britain
to New York by sail, and which was bought by the plaintiffs
while upon the vessel, answered the description prescribed in
the contract and was deliverable in fulfillment thereof.

It remains only to be determined whether the plaintiffs did
all they were bound to do to put the defendant in default after
the iron arrived in New York.   There is no dispute about the
material facts.   They are mostly to be found in the writings
put in evidence.   It is clear that the plaintiffs were willing and

anxious to perform and intended to perform on their part ; and it is equally clear that the defendant, in consequence of the large decline in the price of iron, was unwilling to perform, and did not, at any time after notification of the arrival of the iron, mean to perform.   There can be no doubt that he was man-œuvering to get out of a disadvantageous contract, and we must hold upon the undisputed facts that he was not success-ful.

The plaintiffs had control of the iron upon its arrival, which was made more complete by their final contract with the owners on the 14th of May.   They could at any time make complete title to it as it came from the vessel and passed the hands of the government weighers, and then they could have delivered it to the defendant in precise accordance with the terms of the contract if he had expressed any willingness to take it.   Their repeated requests for directions, and repeated offers to deliver, were sufficient to call for some action on the part of the defend-ant.   His conduct was such as to justify them in storing the iron, and hence their offer to deliver the iron on the 1st of June, when they had paid for the iron and obtained all the necessary documents, was ample and complete, and placed the defendant in default.   He could not then complain of delay for which he was responsible, and that the delivery was not then *ex vessel* which he had prevented.   The court would, therefore, have been justified in directing a verdict for the plaintiffs, and there was at least error in portions of the charge excepted to and in the refusals to charge as requested.

The judgment should be reversed and new trial granted, costs to abide event.

All concur, except DANFORTH, J., who votes for affirmance on the ground stated by the General Term, and ANDREWS, J., not voting.

Judgment reversed.