## Chicago Union Traction Co. v. Sarah A. Ludlow.

1.  INSTRUCTIONS—*Rule Limiting Number to be Received is Unreasonable.*—A hard and fast rule limiting in advance the number of instructions to be tendered by each party, is unreasonable.

2.  SAME—*When Limiting Number to be Received Will Not Reverse.*—Where the substance of instructions not received because in excess of an arbitrary number fixed by the court, is contained in others which are received and given, the act of limiting the number to be received is not ground for reversal.

3.  EVIDENCE—*Province of Jury Where it is Conflicting.*—Where the evidence is conflicting it is for the jury to find where the preponderance lies.

4.  VERDICTS—*Upon Conflicting Evidence—When They Will Not be Disturbed.*—A verdict upon conflicting evidence will not be disturbed unless it is manifestly against the weight of the evidence.

5.  RELEASE—*Of Cause of Action for Personal Injuries—When it Will Not be Binding.*—Where a release of a cause of action for personal injuries is signed by a party when by reason of shock, opiates or pain, she was in such physical condition that she did not understand

t'ie nature of the paper presented to her, or the state of her mind was such that she then acted without deliberation, without understanding the real subject-matter of the release, or if it was not fairly read to her, the instrument is void and does not bind her.

6. Same—*Whether Legally Obtained is a Question for the Jury.*— Whether a release is legally obtained from a party under circumstances which estop her, is a question of fact, to be determined in the first instance by the jury.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. Philip Stein, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed June 18, 1903.

John A. Rose and Louis Boisot, attorneys for appellant; W. W. Gurley, of counsel.

J. W. Richey, Theodore G. Case and John T. Murray, attorneys for appellee; A. W. Browne, of counsel.

Mr. Presiding Justice Ball delivered the opinion of the court.

This is an action by appellee against appellant to recover damages for personal injuries.

The first count of the declaration charges that on October 15, 1900, while appellee was crossing Lake street, at La Salle street in the city of Chicago, with due care, appellant started one of its cars " of a sudden and without any warning " before appellee had time to cross Lake street, and she was struck and injured thereby, etc.

The second count alleges that appellant " started one of its cars westward along said Lake street," etc. A plea of the general issue was filed.

The trial resulted in a verdict finding appellant guilty and assessing appellee's damages at the sum of $1,250.

In addition to the general verdict the jury returned the following special findings :

" Do you find from the evidence that the plaintiff could have avoided the accident and injury in question by exercising ordinary care and caution for her own safety just before and at the time and place of the happening thereof ?
No.

Do you find from the evidence that the release received in evidence was obtained from plaintiff by such fraud as defined in these instructions ?

Yes."

Appellant interposed a motion for new trial, which was overruled, and judgment was entered upon the verdict. From that judgment this appeal was taken.

Appellee, a woman about fifty-five years of age, was walking along the west side of La Salle street. She attempted to cross Lake street, passing behind an east-bound car, when she was struck by the fender of a slow-moving west-bound car. This car had just started from the east side of La Salle street, where it had been stopped by a police-man. She was thrown down, her ankle was injured and she was bruised on the left side from foot to shoulder. She was confined to her bed for nearly three months. At the time of the trial she was still using crutches.

At the beginning of the trial the court, of its own motion, limited the number of instructions to be tendered to fifteen on each side. The appellant, however, tendered twenty-three; of which the court gave thirteen as presented, modi-fied six and gave them as modified, and marked the three remaining instructions " Not received." That a hard and fast rule limiting in advance the number of instructions to be tendered by each party is unreasonable, is decided in Chicago City Ry. Co. v. Sandusky, 198 Ill. 405. Indeed, the learned trial judge seems to have found the rule too rigid, since he gave nineteen instructions tendered by appellant. The three instructions " not received " must be considered as if they had been " refused." The first marked " Not re-ceived " states the issues to be : 1. Was the car " started of a sudden and without any warning ? " 2. Was it " neg-ligently started or operated ? " 3. Could those in charge of the car have seen the peril of appellee in time to stop the car before the collision ? 4. Was appellee using due care ?

The second is based upon the allegations of the first count of the declaration, and instructed the jury that unless they find the plaintiff was then in the use of due care, and

the defendant started its car "of a sudden and without any warning," they should find for the defendant.

The third is based upon the second count, and instructs the jury that unless they believe the allegations therein contained as to care on the part of the plaintiff, and of negligence on the part of the defendant, they must find the defendant not guilty.

We are of the opinion that the substance of these three instructions is contained in the instructions given for the appellant, as is shown by the reading of instructions Nos. 7, 11, 12, 13, 17 and 18, and that the jury were fully instructed upon the issues in the case. This being determined, the cause will not be reversed because the trial judge limited the number of instructions to be presented to him. Chicago City Ry. Co. v. Sandusky, *supra*.

The declaration alleges that at the time of her injury appellant was walking toward the south. If this be material, which we doubt, the evidence in regard thereto is conflicting, and it was therefore for the jury to find where the preponderance lay.

It is urged that the evidence wholly fails to sustain the charge made in the declaration that the negligence consisted in suddenly starting the car; that this allegation necessarily means that the car had been standing still, since a start implies a beginning of motion.

The evidence does not fully sustain this contention. Steinbach, the motorman operating the car which struck appellee, says:

"I was going slow; I was right at the crossing, and I had just started from the other side of the street where a policeman stopped me; I was just barely moving along."

Whether appellee was negligent or in the exercise of due care for her personal safety, and whether or not appellant was negligent at the time of the injury, are questions of fact which were submitted to the jury under proper instructions. On each of these questions, the evidence being conflicting, as is shown by the general verdict and by the first special finding, the jury found for appellee. The rule in

such cases, as laid down by the Supreme Court, forbids us to interfere, unless we can say (as we can not in this case) that the verdict is manifestly against the weight of the evidence.

The day after the accident appellant secured from appellee a release of and from all claims arising out of this accident, for the consideration of $20. This release is interposed as a complete defense to the action; and this is its effect unless appellee has impeached it.

The facts as narrated by the agent who called upon her, and by appellee, are as follows : He says that after some conversation, the details of which are not given, he filled in the written portion of the release; that he read the paper to her, asking her if everything was satisfactory, and if she understood everything; and everything was "yes." "She seemed to understand." He gave her an order on the company for $20, took her signature to the release and departed.

Appellee says that an agent came in "and said, quite agitated—said he would give me $20, and that would help pay my expenses here. * * * I signed three papers at that time, I spoiled by signing it. I couldn't sign it right because I didn't know; what occasioned it was the taking of some morphine for my misery, the pain I was in, and the pain I was suffering; everything I looked at, it looked as if there was three of them. I didn't read anything. I couldn't write. I tried three times, and then I tried it last and this agent took hold of my hand and I had the pen in my hand and I signed it that way; that is, he holding my hand. * * * I had taken morphine. I took more than I ought to take; the doctor told me to only take a half a grain, and I took a whole one because I suffered so." She says the paper was not read by her nor to her.

The next morning she sent the following letter to appellant :

"CHICAGO, ILL., October the 1th, 1900.

ADJUSTANT CLERK : As I read the check to-day my landlady said that was all she thought intended giving me. if I had that I would not signed nam to no $20 dollars I thought this was onely to help me while in bed for I would

not except & poot my name to a paper for less $2-000 two thousand dollars for such an inguary as I got I have not got the check cashed yet & you can come & get it I will not accept so little & another thing I so under the infunce of morpene to stupifi pain though so strange never ask me what I would setle the ingery for if you had it would of saved trouls you ought to known that no one that was ingerd for life would except that amunt of money so you will come to see me before I can get out which expect will be a good while yours.

Yours With Respect,<br>Sarah A. Ludlow."

If a release is fairly entered into, if the parties are on equal footing, and there is no substantial reason to believe that any mistake was made in respect to the subject-matter of the release, then appellee is not at liberty to say that she did not read it, or that she did not understand it, and she is bound by the settlement; but if it appears from the evidence that by reason of shock, opiates or pain, appellee was then in such physical condition that she did not understand the nature of the paper presented to her, or that the state of her mind was such that she then acted without deliberation, without understanding the real subject-matter of the release, or if it was not fairly read to her, the instrument is void and does not bind her. Whether the release was legally obtained from appellee under circumstances which estop her, is a question of fact, to be determined in the first instance by the jury. Ill. Central R. R. Co. v. Welch, 52 Ill. 183; Chicago W. D. Ry. Co. v. Mills, 105 Ill. 72; C. R. I. & P. Ry. Co. v. Lewis, 109 Ill. 132; National Syrup Co. v. Carlson, 155 Ill. 210; Pawnee Coal Co. v. Royce, 184 Ill. 402; Pioneer Cooperage Co. v. Romanowicz, 186 Ill. 14; Hartley v. C. & A. R. R. Co., 197 Ill. 445; U. P. Ry. Co. v. Harris, 158 U. S. 331; Dixon v. Brooklyn, etc., R. R. Co., 100 N. Y. 179.

The alleged settlement was made the next day after the accident, when it is probable she was yet suffering from the shock and from the deadening influence of opiates.

" This, it must be admitted, was unseemly haste, and whether the plaintiff was 'incapacitated to contract,' it

may be safely said she was in no condition to consider, with any degree of deliberation, a matter so grave as that submitted to her." C. R. I. & P. Ry. Co. v. Lewis, *supra*.

Appellee was seriously injured. She was confined to her bed two and one-half months and to her room for nearly six months. She has not been able to work since the day she was hurt. The sum she was to receive in full accord and satisfaction for all her injuries, pains and expenses is $20. Under the evidence such sum is absurdly inadequate. Such inadequacy is a circumstance which the jury may take into account in determining whether or not the alleged settlement was fairly and understandingly entered into. Featherstone v. Betlejewski, 75 Ill. App. 72; 10 Am. & Eng. Ency., 329.

But it is urged that appellee did not return the check she received, and that having retained the same, she can not recover in this action. The paper she received is not a check, but is an order upon the treasurer of appellant. Appellee never attempted to cash this order; on the contrary upon the day following its receipt she informed appellant that she would not accept it, that they could call to get it. Our Supreme Court has said that if the release was obtained by fraud, or at a time when appellee was incapacitated to contract, the paper is not binding on her; and that it is not necessary for her to pay back the money as a condition precedent to her right to bring suit for 'damages. This is the law, for the obvious reason that the alleged release never had any binding force, and there was, therefore, nothing to rescind :

" A contract void on account of fraud, or for any other reason, is, in law, as though it had never been executed." C. R. I. & P. Ry. Co. v. Lewis, 109 Ill. 130.

What circumstances will amount to proof can never be matter of general definition; the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. Deniston v. Hoagland, 67 Ill. 270.

A careful consideration of all the evidence upon the question of this release leads us to the settled opinion, in accord

364　　Appellate Courts of Illinois.

with the finding of the jury, that the minds of the parties never met upon the principal subject embraced in the release, namely, the damages for which this action was brought, and that therefore it is not binding upon her.

The judgment of the Superior Court is affirmed.