## HARRISON v. FORTLAGE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 14. Argued November 18, 1894. — Decided March 2, 1896.

A contract for the sale of goods "shipping or to be shipped during this month from the Philippines to Philadelphia, per steamer Empress of India," at a certain price "*ex* ship"; "sea-damaged, if any, to be taken at a fair allowance; no arrival, no sale;" and providing that if, by any unforeseen accident, she is unable to load and no other steamer can be procured within the month, the contract is to be void; does not require the goods to be carried to their destination by the vessel named; and is satisfied if the goods are put on board of her at the Philippines at the time specified, and, upon her being so injured on the voyage by perils of the sea as to be unable to carry them on, are forwarded by her master by another steamer to Philadelphia.

This was an action of assumpsit, brought April 22, 1890, in the Circuit Court of the United States for the Eastern District of Pennsylvania, by Hermann Fortlage and others, aliens, partners under the name of A. Tesdorpf & Company, against Charles C. Harrison and others, citizens of Pennsylvania, partners under the name of Harrison, Frazier & Company, upon a contract in writing for the purchase of 2500 tons of sugar. The facts admitted or proved at the trial were as follows:

The plaintiffs' agent signed, and the defendants accepted, a contract in writing in the following terms:

"New York, June 22, 1889.

"Messrs. Harrison, Frazier & Co., Philadelphia.

"Dear Sirs: I have this day sold you, for account of Messrs. A. Tesdorpf & Co., of London, about 2500 tons superior Iloilo sugars, usual assortment, ($\frac{1}{8}$ No. 1, $\frac{1}{4}$ No. 2, and $\frac{5}{8}$ No. 3,) shipping or to be shipped during this month from the Philippines to Philadelphia, per steamer Empress of India, at $5\frac{5}{8}$ c. per pound *ex* ship, net landed weights, two per cent tare, cash, less $2\frac{1}{8}$ per cent, in ten days from average date of discharge.

"Sea-damaged, if any, to be taken at a fair allowance.

"No arrival, no sale.

"Should the steamer, through any unforeseen circumstance, such as accidents of the seas, stress of weather, &c., be unable to load these sugars within the time specified, and the sellers cannot secure other steam tonnage to load in June, this contract is to be void."

The words "*ex* ship," as used in this contract, were understood in the trade to mean that the buyer receives the goods at the tackle of the ship, the seller paying the freight and the duty, and the buyer paying all charges of landing after the goods leave the ship's tackle.

The plaintiffs were merchants; and the defendants, as the plaintiffs knew, were refiners of sugar, and bought this sugar for use in their regular business.

The sugar was shipped at the Philippine Islands, in bags, in the amount, quality and assortment, and within the time, specified in the contract, on the steamer Empress of India, which was then seaworthy and fit in every particular for her voyage, and which sailed for Philadelphia, *via* the Suez Canal, June 23, 1889. The usual length of the voyage was three months, unless prolonged by accident or by perils of the sea.

On August 21, 1889, the Empress of India, while at anchor at Port Said, was, without her fault, run into by another steamer, and so much damaged as to be obliged to land her

cargo, and to go to Alexandria to be repaired. After being repaired, and reloading her cargo, she sailed from Port Said, November 30, 1889; and, in crossing the Atlantic, met with extraordinarily rough weather, and was forced to put into Bermuda, January 5, 1890; and there, upon the recommendation of surveyors, and in order to enable her to proceed on her voyage with safety, discharged 700 tons of the sugar.

On February 11, 1890, she arrived at Philadelphia, with the remaining 1800 tons of the sugar on board. The 700 tons were forwarded from Bermuda by another steamer, which arrived at Philadelphia, March 3, 1890.

The plaintiffs tendered all the sugar to the defendants; and they refused to receive any of it, upon the sole ground that the contract required the sugar to be brought to Philadelphia in the Empress of India, and therefore the plaintiffs had not performed the contract.

The sugar was sold, by agreement of the parties, and for whom it might concern, for less than the contract price; and it was admitted that, if the plaintiffs were entitled to recover at all, the measure of damages was the sum of $63,098, the difference between the contract price and the proceeds of the sale.

The Circuit Court instructed the jury that the plaintiffs were not required by the contract to do more than they had done, and that the defendants were not warranted in declining to receive the sugar; and the jury, by direction of the court, returned a verdict for the plaintiffs for the sum claimed, and interest, upon which judgment was rendered. The defendants excepted to the instruction and direction of the court, and sued out this writ of error.

*Mr. John G. Johnson* for plaintiffs in error.

I. An arrival by the Empress of India was a condition precedent.

That this is so, and that the words are not words of contract, but of condition, seems settled by the remark of Parke, B., in *Johnson* v. *Macdonald*, 9 M. & W., 600, 603, and the

decision there. That is, no obligation is assumed by the seller that the goods shall be carried at all, much less that they shall be carried by a particular ship. But he is not to be bound to deliver or the purchaser to accept unless the goods reach Philadelphia in that ship. The contract was not a sale — it was a contract to sell, which became a sale only on performance of the conditions precedent, whatever they were, among which it was admitted loading within time was one, and arrival of the sugar at Philadelphia was another. That is, until and unless the goods arrived there was no sale, no duty to tender, no duty to accept, no title had passed, no ownership existed in the purchaser. This was admitted below, and probably will be in this court. The authorities are numerous, and will be found collected in *Neldon* v. *Smith*, 7 Vroom, (36 N. J. Law,) 148. It is a contract to sell the goods when they arrive. *Stockdale* v. *Dunlop*, 6 M. & W. 224, Parke, B. The best test, however, is that the purchasers have no insurable interest in the property. *Stockdale* v. *Dunlop, ub. sup.*

In contending that *arrival*, which is a condition precedent to the sale, extends to ship as well as cargo, *i.e.*, means arrival of cargo by that ship, we submit the following considerations looking to the contract alone for the reasons:

It is a precedent condition in all contracts of sale that there is a subject of sale. Benjamin on Sales, § 669.

The sale here is made to depend on arrival — *no arrival, no sale.* Therefore, till there is an arrival there can be no subject of sale.

It might be supposed to be, if the words are not carefully weighed, a condition avoiding the sale, but it is not, for no title is to pass till arrival, and that is the test, whether the transaction is a sale or a contract to sell. That the sugar did not, till arrival, become the subject of a sale is shown by *Bowes* v. *Shand*, 2 App. Cas. 455, and accords with plaintiffs' own views as shown by their evidence.

The property that is contracted to be sold, and that was to be the thing sold, on the happening of the future event (arrival), is the thing described in the contract — sugar — and

among the terms there is this one: that it is to be *shipped to Philadelphia per Empress of India.*

It may not be amiss to point out a consequence of reading the contract as it was asked to be read, viz., that arrival of the sugar was the one only condition precedent and that the mode of arriving was immaterial. It will follow that one of the most important rights of a shipper is lost by the plaintiff and given to no one. This is the right of electing to permit the goods to be forwarded or to accept them at the port of distress. The shipper always has such a right; if he declines exercising it, the master may, by forwarding, impose a very heavy burden on his goods.

If, therefore, he has undertaken to deliver in the event of the arrival of the goods, regardless of the ship, he cannot avoid the duty because the burden becomes too great. Intentionally to divert the goods would be a fraud on the contract, if his object was to avoid his obligation to deliver. *Hawes* v. *Humble*, 2 Camp. 327, *n.* If arrival by the ship is the condition, he is discharged altogether by the misfortune to that ship. *Idle* v. *Thornton*, 3 Camp. 274.

It is this that is the basis of the decision of the Court of Exchequer in *Lovatt* v. *Hamilton*, 5 M. & W. 639, which the judge at the trial distinctly refused to follow. He would not see that if the arrival by the ship is not part of the condition, the seller will be subjected to very different responsibilities than if the contract is to deliver on the arrival of the goods only. *Hale* v. *Rawson*, 4 C. B. (N. S.) 85, is an illustration of the effect of confining the condition to the arrival of the ship only. The obligation to deliver the goods was held to be absolute though there were none on board.

It being admitted that arrival of some kind is a condition precedent, the inquiry arises does this contract belong to the class known as contracts to arrive, which are classified in Benjamin on Sales, § 586. The contract concludes with "no arrival, no sale." All the duty of the purchaser must be wrapped up in that one word *arrival.* The authorities agree that the word "arrival" does not apply to the goods only, but to the ship as well. *Idle* v. *Thornton*, 3 Camp. 274;

*Shields* v. *Pettie*, 4 Comst. 122 ; *Johnson* v. *Macdonald*, 9 M. & W. 600 ; *Stockdale* v. *Dunlop*, 6 M. & W. 224 ; *Lovatt* v. *Hamilton*, 5 M. & W. 639 ; *Hawes* v. *Humble*, 2 Camp. 328, n. ; *Hale* v. *Rawson*, 4 C. B. (N. S.) 85. Unless the words exclude the construction, the condition to arrive, if a ship is named, means the arrival of that ship, with the cargo.

II. It follows that a delivery by the Trinidad was not a delivery by the Empress of India for the purposes of this contract. That it was for the purpose of enabling the Empress to earn the agreed freight is nothing to the purpose. There is no connection between the contract to sell and the contract with the carrier *to carry*. The phrase that a master is the agent of all concerned has nothing to do with the case. It applies perfectly to the seller, who was the owner, and to the insurer, and to any one having a right in or to the sugar, but we had none. We could not insure ; we had no insurable interest. *Stockdale* v. *Dunlop*, 6 M. & W. 224, decides the very point.

The English and American cases differ as to the duty of the master to forward ; but in this case there was no duty, even under the American rule. *Griswold* v. *New York Ins. Co.*, 3 Johns. 327.

Whose agent then was the master ? How could he be agent for one not having an interest in the cargo ? He was agent of the shipowner to earn the freight, say all the authorities. *Australian Navigation Co.* v. *Morse*, L. R. 4 P. C. 222 ; *Cargo ex Argus*, L. R. 5 P. C. 134, 164 ; *Notara* v. *Henderson*, L. R. 7 Q. B. 225 ; *Shipton* v. *Thornton*, 9 Ad. & El. 314 ; *Hickie* v. *Rodocanachi*, 4 H. & N. 455 ; *Vlierboom* v. *Chapman*, 13 M. & W. 230 ; L. R. 1 Ad. & Ec. 293 ; *Heyworth* v. *Hutchinson*, L. R. 2 Q. B. 447 ; *Neill* v. *Whitworth*, 18 C. B. (N. S.) 435.

If the parties stipulate for delivery by a certain vessel, there can be no other delivery substituted for it. *Bowes* v. *Shand*, 2 App. Cas. 455 ; *Cleveland Rolling Mill* v. *Rhodes*, 121 U. S. 255 ; *Coddington* v. *Paleologo*, (*per* Martin B.,) L. R. 2 Ex. 193, 197.

In fact, if we discard the uniform rule in England, founded on Baron Parke's suggestion in *Johnson* v. *Macdonald*, *supra*,

we have a stipulation for loading in a particular steamer, which is a condition, but *quâ* all that relates to the mode of transportation, there is neither contract nor condition. The seller, in the event of disaster, and the shipowner, are each given an option as to that, but not the purchaser. Which is the more reasonable construction of a contract resting on mutual promises? See *Iasigi* v. *Rosenstein*, 141 N. Y. 414.

*Mr. William Allen Butler*, (with whom was *Mr. Wilhelmus Mynderse* on the brief,) for defendant in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The single question is whether the contract between the parties required all the sugar to be brought to Philadelphia in the Empress of India, upon which it was originally shipped. This depends upon the meaning of the terms of the writing in which the parties must be assumed to have embodied and expressed their whole intention, and to have defined all the conditions of the contract. The court is not at liberty, either to disregard words used by the parties, descriptive of the subject matter, or of any material incident, or to insert words which the parties have not made use of. *Norrington* v. *Wright*, 115 U. S. 188; *Filley* v. *Pope*, 115 U. S. 213; *Watts* v. *Camors*, 115 U. S. 353; *Cleveland Rolling Mill* v. *Rhodes*, 121 U. S. 255; *Seitz* v. *Brewers' Refrigerating Co.*, 141 U. S. 510; *Bowes* v. *Shand*, 2 App. Cas. 455; *Welsh* v. *Gossler*, 89 N. Y. 540; *Cunningham* v. *Judson*, 100 N. Y. 179; *Iasigi* v. *Rosenstein*, 141 N. Y. 414.

This contract was made in June, 1889, for the sale of sugar, described as "shipping or to be shipped during this month from the Philippines to Philadelphia, per steamer Empress of India." A contract "to ship by" a certain vessel for a particular voyage ordinarily means simply "to put on board," not including the subsequent carriage; and there is nothing in this contract to show that a different meaning was in the contemplation of the parties.

The words "ex ship" are not restricted to any particular ship; and by the usage of merchants, as shown in this case, simply denote that the property in the goods shall pass to the buyer upon their leaving the ship's tackle, and that he shall be liable for all subsequent charges of landing. They do not constitute a condition of the contract, but are inserted for the benefit of the seller. See *Neill* v. *Whitworth*, 18 C. B. (N. S.) 435, and L. R. 1 C. P. 684.

The clause "sea-damaged, if any, to be taken at a fair allowance," contemplates the risk of damage to the goods by perils of the sea, and does not restrict to any particular ship the subsequent transportation of such goods to their destination.

In the clause "no arrival, no sale," the word "arrival" evidently refers, as the word "sale" must necessarily refer, to the goods which are the subject of the contract, and not to the particular vessel on which they are shipped; and the whole effect of the clause is that, if the goods never arrive at their destination, the buyers acquire no property in them, and do not become liable to the sellers for the price.

The remaining clause, which provides that, if the Empress of India, by unforeseen accident, is unable to load in June, and the sellers cannot secure another steamer during that month, the contract is to be void, touches the matter of loading only. The contract fixes no limitation of time in any other respect.

The contract nowhere requires that the sugar shall arrive at Philadelphia by the Empress of India; and essentially differs in this respect from the cases, cited at the bar, of contracts for the sale of goods "to arrive" by, or "on the arrival" of, a ship named, as in *Lovatt* v. *Hamilton*, 5 M. & W. 639; *Johnson* v. *Macdonald*, 9 M. & W. 600; and *Hale* v. *Rawson*, 4 C. B. (N. S.) 85. A particular ship being designated as to the putting on board only, and not as to the arrival, it is not to be inferred that the goods must be carried to their destination in the same ship.

The sugar in question having been put on board the Empress of India, and the conditions of the contract thus satisfied, so far as that ship was concerned, the subsequent transportation and delivery of the goods were to be governed by the

general rules of the maritime law. By that law, as understood in England, the master, from the necessity of the case, had the right, and, by our law, the duty, in case of disaster to his ship, to transship the goods and send them on by another vessel, if one could be had. *The Maggie Hammond,* 9 Wall. 435, 458; 3 Kent Com. 212.

In the able argument for the plaintiffs in error, it was admitted that the rule, that the master in case of necessity is the agent of all concerned, applied to the seller, who was the owner, and to the insurer, and to any one having an insurable interest in the goods; but it was contended that the plaintiffs in error, before the arrival of the goods, had no insurable interest therein, and *Stockdale* v. *Dunlop,* 6 M. & W. 224, was relied on as decisive of this. But that case was decided upon the single ground that there the contract for the sale of goods was oral, and therefore incapable of being enforced. It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself. In the present case, the plaintiffs in error, under a valid contract in writing, had an insurable interest, by reason of the title which would accrue to them upon arrival and delivery, and of the injury which they might suffer by a previous loss of the goods. *Insurance Co.* v. *Chase,* 5 Wall. 509, 513; *Filley* v. *Pope,* 115 U. S. 213, 220; *Wilson* v. *Jones,* L. R. 2 Ex. 131, 151; 3 Kent Com. 276.

*Judgment affirmed.*