STATE OF IOWA v. J. D. CARSON, Appellant.

**Fish and game:** SHIPMENT OUT OF THE STATE: STATUTE. A delivery of game to a common carrier for transportation to a point outside of the state, in violation of the code prohibiting the shipment of game out of the state, constitutes a shipment within the meaning of the statute, even though the game was taken from the carrier by state authorities while yet within the state.

*Appeal from Clay District Court.*—HON. D. F. COYLE, Judge.

THURSDAY, JUNE 9, 1910.

THE defendant was convicted of shipping game birds out of the state, and appeals.—*Affirmed.*

*Geo. A. Heald,* for appellant.

*H. W. Byers,* Attorney-General, and *Charles W. Lyon,* Assistant Attorney-General, for the State.

SHERWIN, J.—The defendant delivered to the United States Express Company at one of its offices in this state a box of prairie chickens for transportation and delivery to a commission firm in Chicago, Ill. The box was properly billed to the address placed thereon by the defendant and

loaded on the express car of the train on the Chicago, Milwaukee & St. Paul Railway Company bound for Chicago. The box was taken from the express company and from the train at Marion, Iowa, by a deputy game warden of the state who acted under the authority of a search warrant. There were 41 undressed  prairie chickens in the box. They were later disposed of in this state as provided by law.

The defendant was convicted under section 2555 of the Code, which provides that "no person  .  .  . shall ship, take or carry out of this state" any game birds. He contends that, as the birds were taken from the express company while in this state, there was no shipment out of the state, and hence no violation of the law. He says. in effect, that the state authorities stepped in with a search warrant, and prevented the completion of a shipment which would have been unlawful if completed. We are of opinion that the delivery to the carrier for transportation to a point beyond the boundary of the state constituted a violation of the statute. The word "ship," as therein used, must be given its usual and ordinary meaning, for there is nothing in the law itself which indicates a different legislative intent. The words "ship" and "shipment" are now generally used to express the idea of goods delivered to carriers for the purpose of being transported from one place to another, and such signification is given to them by lexicographers generally. Webster's International Dictionary; the Centuray Dictionary. The law dictionaries give substantially the same definitions. See Abbott's, Bouvier's, and Rapalje & Lawrence's. The adjudicated cases are in general accord on the question. In a leading case in England, *Bowes v. Shand,* L. R. 2 App. Cas. 455, the court was unanimously of the opinion that the word "shipped" according to its natural and ordinary signification and meaning was the putting of goods on board a vessel and taking a bill of lading therefor; and it was there held that goods placed on

board in the month of February were not shipped in "March or April," although the ship did not in fact sail until March. In *Ledon v. Havemeyer,* 121 N. Y. 179 (24 N. E. 297, 8 L. R. A. 245), it was held that a contract for the sale of goods calling "for shipment within thirty days" does not require a clearance of the vessel within that period, but there was a compliance if, within that time, the goods were put on board a vessel for transportation within a reasonable time. The ordinary meaning of the word "shipped" is to load for transportation. *Fisher v. Minot,* 10 Gray (Mass.) 260; *Harrison v. Fortlage,* 161 U. S. 57 (16 Sup. Ct. 488, 40 L. Ed. 616); *Caulkins v. Hellman,* 47 N. Y. 449 (7 Am. Rep. 461); *Schmertz v. Dwyer,* 53 Pa. 335. The defendant has not presented for our consideration any case which announces a different rule. In *Selkirk v. Stephens,* 72 Minn. 335 (75 N. W. 386, 40 L. R. A. 759), the exact point was not decided, but the language of the opinion seems to recognize the rule as herein stated. The court is not to presume that the Legislature intended the word "ship" to mean something different from its ordinary signification.

There is no merit in the appellant's contention, and the judgment must be, and it is, *affirmed.*