OREGON R. & NAVIGATION CO. v. CAMPBELL et al. (SMALLWOOD, Intervener).

(Circuit Court, D. Oregon.   July 11, 1910.)

No. 3,308.

COMMERCE (§ 41*)—INTERSTATE COMMERCE—TRANSPORTATION—ORIGINAL PACK-AGES—"INTRASTATE COMMERCE."

   Where merchandise was transported in interstate commerce to its destination in Oregon, where it was received by the consignee, placed in a warehouse, and freight paid, the interstate character of the shipment thereupon terminated, and the subsequent transportation of the goods in the original packages to other points in Oregon by the consignee constituted intrastate traffic, for which the carrier was only entitled to charge state rates provided by the State Board of Railroad Commissioners.

   [Ed. Note.—For other cases, see Commerce, Dec. Dig. § 41.*]

Action by the Oregon Railroad & Navigation Company against Thomas K. Campbell and others, and W. S. Smallwood, intervener. Judgment for intervener.

See, also, 177 Fed. 318.

W. W. Cotton, for complainant.

Teal, Minor & Winfree, for intervener.

WOLVERTON, District Judge. The purpose of this proceeding is to recover from the complainant above named, through intervention of W. S. Smallwood, overcharges on freight shipped out of Portland to Pendleton and Baker City, being the difference between the tariff adopted by the State Board of Railroad Commissioners for the transportation of freight intrastate in character and the tariff fixed by the railroad companies upon interstate traffic, under what is known and designated as "tariff L525." Three shipments are involved, each under slightly different conditions. The first relates to a shipment of groceries in general, and the other two to the article of sugar. As to these it is specified as follows:

(1) "Said goods, wares and merchandise were purchased by said Allen & Lewis in states other than Oregon to become a part of its common stock in trade at Portland, Oregon, and were billed and transported to their said point of destination, to wit, Portland, Oregon, by various means of carriage, both water and rail; and on arrival at said city said Allen & Lewis surrendered the bills of lading therefor, paid the freight thereon, took possession of the same, and the same were taken in original packages by the said Allen & Lewis to its storerooms and became a part of the common stock in trade carried by it for sale in said city of Portland, Oregon, and there held an indefinite period for sale, and were thereafter sold from the said stock in said city in the orig-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

inal packages as received by said Allen & Lewis and transported to La Grande, Oregon, in said packages by the complainant."

(2) "Said sugar so shipped was a portion of a lot of sugar purchased in California by said Allen & Lewis to become a part of its common stock in trade at Portland, Oregon, and was billed and transported to its said point of destination, to wit, Portland, Oregon, by water by the Richardson Steamship Line, an independent water carrier not under common control or management by or with the complainant and having no joint tariffs, through rates, arrangements or connections with the complainant for continuous carriage or shipment or otherwise. On arrival at said city said Allen & Lewis surrendered the bills of lading therefor, paid the freight thereon, took possession of the same, and the same was taken in original packages by said Allen & Lewis to its store and warehouse and became a part of its common stock in trade carried by it for sale, and there held an indefinite period for sale, and was thereafter shipped from its said stock in Portland, Oregon, in the original packages as received by said Allen & Lewis, and transported to La Grande, Oregon, in said packages by the complainant and delivered to said Oliver, who held the same for the account of and subject to the order of said Allen & Lewis."

(3) "Said sugar was purchased in the state of California by said Lang & Co. for future sale by it at Portland, Oregon, with the intention of shipping it from Portland to some point within the state of Oregon. Said sugar was sold and billed to Lang & Co. and transported to Portland, Oregon, its point of destination, by the Richardson Steamship Line, an independent water carrier not under common control or management by or with the complainant and having no joint tariffs, through rates, arrangements or connections with the complainant for continuous carriage or shipment or otherwise. On arrival of the sugar at said city of Portland, said Lang & Co. surrendered its bill of lading therefor, paid the freight charges thereon and took possession of the same in the original packages as shipped from San Francisco. Thereupon said sugar was insured against loss by fire by said Lang & Co. in its own name and as owner thereof while in warehouse at Portland, Oregon, and was held by said Lang & Co. in warehouse until sold and cars supplied for loading, and the same was sold after its arrival at Portland, Oregon, to said Baker City Grocery Company by Lang & Co. at Portland, Oregon, reshipped from said city by Lang & Co. to said Baker City Grocery Company at Baker City, Oregon, over the lines of the complainant under a bill of lading issued to said Lang & Co. therefor, and was transported by complainant under said bill of lading in the original packages to Baker City, Oregon, and there delivered by complainant to said Baker City Grocery Company, the consignee named in said bill of lading, and the charges collected thereon from said Baker City Grocery Company for transporting the same from Portland to Baker City."

The especial contention of the railroad company is that the goods included in these shipments partake of the character of interstate commerce, and hence that they should take the rate under tariff L525, notwithstanding the transportation thereof was wholly within the state. It is so contended from the fact that the goods were shipped into the state in original packages, and that they were shipped from the point of their arrival within the state to other points within the state in the same original packages. In other words, it is maintained that goods do not lose their character as interstate commerce while handled in the original packages in which they enter the state. This would lead, of course, to the doctrine that "once interstate commerce in the original package always interstate commerce," in its most comprehensive sense, until the packages are broken. I am not impressed with the soundness of the position. The idea is based on what are known as the Original Package Cases of the Supreme

Court, the leading one being Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128. A different principle is involved here, however, from that applied there. It was maintained there, and so determined by the court, that it was an interference with interstate commerce for one state to inhibit the sale of beer in original packages or kegs, unbroken and unopened, by the importer from another state. It is said in that case, at page 124, of 135 U. S., at page 689, of 10 Sup. Ct. (34 L. Ed. 128):

"Under our decision in Bowman v. Chicago, etc., Railway Co., supra (125 U. S. 465 [8 Sup. Ct. 689, 1062, 31 L. Ed. 700]), they (the importers) had the right to import this beer into that state, and in the view which we have expressed they had the right to sell it, by which act alone it would become mingled in the common mass of property within the state."

It would seem that the act of sale alone within the state to which it was imported, whether such sale was in original or broken packages, would liberate the article from the character of interstate commerce, and henceforth "it would become mingled in the common mass of property within the state." And while it is true, as is said in another place in the same opinion (135 U. S. 112, 10 Sup. Ct. 685, 34 L. Ed. 128), that "the transportation of freight or of the subjects of commerce, for the purpose of exchange or sale, is beyond all question a constituent of commerce itself," yet it must be that a different principle applies to the carrier of freight from that which appertains to the importer of goods. An importer may insist that he has a right to sell goods that he has brought into a state from another state, while in the original packages, but it would not follow that a carrier has the right to treat those goods as interstate commerce so long as they remain in that condition, or unsold by the importer. The carrier depends rather upon his contract of carriage, and interstate traffic as to him depends upon whether he is called upon to transport from one state to another, or to serve his patrons by transportation wholly within the limits of a state.

Nor does it seem to me that the principle applied in the Tax Cases is wholly applicable here. That principle rests, not upon the fact that the property taxed has ceased to be interstate commerce, but upon the condition that it has, in the course of its transportation, arrived at its destination, is at rest and enjoying the protection which the laws of the state afford, and is taxed without discrimination like all other property. Such is the doctrine of American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. Ed. 538. The court in this case adheres to the rule announced in Leisy v. Hardin, supra, that the fact of sale at point of destination was essential to relieve the property from the character of interstate commerce, but holds that, notwithstanding the property continues to be interstate commerce, it may yet be taxed by the state in which it has come to rest, under the conditions just narrated. The doctrine has been reaffirmed in General Oil Company v. Crain, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. Ed. 754. Transportation from a point in one state to a point in another is undoubtedly interstate commerce. But, says the court in Gulf, Colorado & Santa Fé Ry. Co. v. Texas, 204 U. S. 403, 409, 27 Sup. Ct. 360, 51 L. Ed. 540:

"When the commodity transported has reached the termination of its journey and has been delivered to the consignee, it ceases to be a subject of interstate commerce, and the subsequent shipment from the point at which it has been delivered to another point in the state, is an intrastate shipment."

The case turns upon the contract of shipment between the shipper and carrier, and when that is at an end, the shipper can claim nothing · further as it respects the property carried. It is then at the command of the owner, and if he chooses to ship it again from one point to another in the state, it becomes an intrastate shipment, notwithstanding the owner may be dealing with an article of interstate commerce. For illustration, take the case of Leisy v. Hardin, supra; · where beer was shipped into Iowa in original packages, the owner could not be deprived of the right to sell the beer while it remained in original packages because it was an article of interstate commerce. The shipment of the beer to him from another state was an interstate shipment. When that shipment was at an end, another carrier, who might transport the beer to another point in the state of Iowa, could not claim that the shipment was interstate because the article might be characterized interstate commerce in the hands of the owner. There must be, and is, a distinction between interstate commerce as it pertains to the article and interstate commerce as it pertains to transportation and carriage. The former depends upon the fact that it is an article of commerce—that is, of barter and sale—between the states or with foreign countries, and the latter upon the fact that it is being transported from one state into another. . When the transportation ceases or comes to an end, the shipment has lost its character as an interstate shipment, and if the commodity is again moved it becomes an intrastate or interstate shipment according as it is moved to a point wholly within the state or a point without.

I am constrained to the view that the case of Gulf, Colorado & Santa Fé Ry. Co. v. Texas, supra, is controlling in this, and I therefore hold that the intervener is entitled to the rebate demanded in each of the three shipments specified. · Let the decree be entered accordingly.