[No. 21118. Department One. September 14, 1928.]

THE STATE OF WASHINGTON, *on the Relation of Chicago, Milwaukee, St. Paul & Pacific Railway Company, Appellant* v. DEPARTMENT OF PUBLIC WORKS *et al., Respondents.*[1]

[1]Reported in 270 Pac. 300.

*F. M. Dudley* and *A. J. Laughon,* for appellant.

*The Attorney General* and *H. C. Brodie, Assistant,* for respondent department of public works.

*Walter B. Whitcomb* and *S. J. Wettrick,* for respondent Campbell River Mills.

MITCHELL, J.—This is an appeal from a judgment of the superior court of Thurston county, affirming, in review proceedings, an order of the department of public works directing the Chicago, Milwaukee & St. Paul Railway Company and its receivers to make reparations and refunds to the Campbell River Mills Company, Ltd., on account of overcharges for freight on logs carried from Columbia, Whatcom county, Washington, to Bellingham in the same county.

The railway company claimed that the shipments were interstate, and exacted rates accordingly; while the logging company contends that the shipments were intrastate, and instituted this proceeding to recover the difference—the amount paid being greater than the intrastate rates for the haul involved.

The first and main contention on behalf of the appellants is that the logs transported were foreign commerce and that the rates to be charged for the transportation were within the exclusive power of Congress to regulate, through authority vested in the interstate commerce commission, and that the department of public works of this state has no jurisdiction of the subject matter.

The respondent logging company, Campbell River Mills Company, Ltd., a Canadian corporation, had standing timber in Whatcom county, Washington, and on adjacent lands on the other side of the line, in British Columbia. It owned and operated a saw mill on the coast at White Rock, British Columbia, just north of the international boundary line. To facilitate the movement of its logs from the forest, it constructed, owned and operated a private logging railroad which was physically connected with a spur or siding of the appellant railway at Columbia station. Logging cars were furnished by the railway company at the spur, and from there were taken by the respondent over its own private road by its locomotives and crews to the woods, and loaded and returned to the spur in the same manner. There they were taken by the appellant railway, and carried wholly within this state thirty miles to Bellingham, where they were unloaded into the sea for the respondent by a boom company. The bills of lading of the logs were signed by the agent of the appellant railway at Sumas, the nearest station to the Columbia spur having a station agent, and were billed from Columbia to Bellingham. It seems that the logs were commingled in such way at Bellingham that their identity as British Columbia or Washington logs was destroyed.

The shipments involved extended over several years, and from time to time as they were received by the respondent at Bellingham, the respondent sold and delivered altogether from ten to fifteen per cent of them to saw mills at Bellingham and Anacortes; the balance of the logs, put in rafts at Bellingham, were taken by the respondent by means of its own private tug boats to its mill at White Rock, British Columbia.

The point involved does not relate to the right or power to levy a state or local tax upon commerce

intended to be taken and that has already started in transportation to another state, as was the case in some of the authorities called to our attention in the briefs, but it is a matter of transportation that is involved. Whether necessary or not, the Congress of the United States saw to it that its meaning should not be misunderstood, in an act upon the subject. By paragraph (a) of subdivision 2 of § 1 of the Commerce Act, as amended by the Transportation Act of 1920, 41 Stat. L. 474, it is expressly provided that the act shall not apply,

". . . to the transportation of passengers or property, or to the receiving, delivering, storage, or handling of property, wholly within one State and not shipped to or from a foreign country from or to any place in the United States."

Here the service performed was transportation thirty miles wholly within this state, detached at each end from any common carrier service. The goods were taken to the point of shipment by the owner by its own private equipment and facilities, who not being under contract of sale or shipment with another was at liberty to ship the logs or not after they reached the Columbia spur at any time before they were delivered to the appellant railway for transportation, and who, after they were delivered at Bellingham, had the right to sell them in part and take the rest to White Rock by its own private facilities, as it did.

Some stress is laid upon the fact that the appellant railway furnished cars upon which the logs were loaded and taken by the respondent to the spur. But the rate charged was for the transportation only. The trucks or cars furnished by the appellants, although held by the respondent subject to the rule of demurrage, were, nevertheless, under the dominion and control of and handled and used by the respond-

ent, so far as this case is concerned, as though they belonged to the respondent outright, until they were delivered already loaded to the appellant at Columbia spur. It was as though the appellant railway had loaned the respondent a cable or some other implement useful in getting the logs to the Columbia spur for shipment. The transportation of the logs from the forest to the spur was not a shipment; there was no contract of carriage; there was no bill of lading, no consignor or consignee; the goods were not being handled by a common carrier; the logging company simply carried its own goods over its own road and delivered them at the shipping spur. The same rule applies to the movement of the logs from Bellingham to the respondent's mill.

Nor is the fact that logs cut in British Columbia and taken into this state were subject to the tariff laws of any controlling effect. Goods subject to duty brought across the line in any manner whatever were subject to the same tax. This case involves not a duty or tax upon the importation of goods but the transportation of goods by a common carrier a distance of thirty miles wholly within the state, and in our opinion falls within the jurisdiction of the department of public works of this state.

Rather exhaustive briefs have been filed in this case by counsel, citing numerous cases which in turn refer to many others. Upon examination, however, we find that none of them is clearly in point upon the facts and we shall not attempt to review them. We may mention, however, that some of the most important of them are *Coe v. Errol,* 116 U. S. 517; *Hughes Bros. Co. v. Minnesota,* 272 U. S. 469; *Baltimore & Ohio S. W. R. R. Co. v. Settle,* 260 U. S. 166; *McCluskey v. Marysville & Northern R. Co.,* 243 U. S. 36; *State v. Carson,*

147 Iowa 561, 126 N. W. 698; *Oregon R. & Navigation Co. v. Campbell,* 180 Fed. 253.

Another contention of the appellants is that the findings and order of the department of public works deprives them of their property without due process of law. This is not a rate-making case, as the term is commonly understood, but it is one of charges for transportation services from time to time, the proper amount to be determined as it was by comparison with existing tariffs filed by the appellants and supplemented with proof of the value of the haul with other comparable hauls within the state. Upon examination of the evidence, we are satisfied that, by a fair preponderance, it supports the findings of the department which were affirmed by the superior court.

Affirmed.

FULLERTON, C. J., PARKER, TOLMAN, and ASKREN, JJ., concur.