## ARNOLD v. UNITED STATES.

### No. 11677.

Circuit Court of Appeals, Eighth Circuit.

Nov. 20, 1940.

R. Bowland Ritchie, of Wichita, Kan., for appellant.

Otto Schmid, Asst. U. S. Atty., of Kansas City, Mo. (Richard K. Phelps, Acting U. S. Atty., of Kansas City, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and OTIS, District Judge.

GARDNER, Circuit Judge.

This is an appeal from two judgments of conviction entered against appellant, whom we shall hereafter refer to as defendant, one based upon an indictment and the other upon an information. The indictment charged defendant with unlawfully attempting to transport intoxicating liquor containing more than 4 per cent. of alcohol by volume from and out of the State of Missouri into the State of Kansas, without complying with the laws· of the State of Kansas relating to the importation of intoxicating liquor into that state. The information charged defendant with shipping from the State of Illinois into the State of Missouri distilled spirits for beverage purposes in packages not bearing the name of the consignee, the nature of the contents of the package and the quantity of liquor contained therein. On stipulation the actions were consolidated for trial before the court without a jury. Defendant attacked both the indictment and the information by filing a separate demurrer and motion to quash, upon grounds which will hereafter be referred to. When the Government rested in each of the cases, defendant filed demurrers to the evidence challenging its sufficiency to support the charges set forth in the indictment and likewise the charges set forth in the information, and he moved for an acquittal on both charges. The demurrers and motions were overruled and judgments of conviction were entered from which defendant prosecutes this appeal. We shall first consider the appeal from the judgment and sentence based upon the indictment.

A number of grounds for reversal are urged, but in our view it will only be necessary to consider the ruling of the court on defendant's demurrer to the evidence and his motion for acquittal of the charge contained in the indictment. The indictment is based upon Section 223, Title 27 U.S.C.A., which, so far as ˙here material, reads as follows: "(a) Whoever shall import, bring, or transport any intoxicating liquor into any State in which all sales (except for scientific, sacramental, medicinal, or mechanical purposes) of intoxicating liquor containing more than 4 per centum of alcohol by volume are prohibited, otherwise than in the course of continuous interstate transportation through such State, or

attempt so to do, or assist in so doing, shall: (1) If such liquor is not accompanied by such permit or permits, license or licenses therefor as are now or hereafter required by the laws of such State; or (2) if all importation, bringing, or transportation of intoxicating liquor into such State is prohibited by the laws thereof; be guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned not more than one year, or both."

The statute then provides that in determining whether one is acting in violation of its provisions, "the definition of intoxicating liquor contained in the laws of such State shall be applied, but only to the extent that sales of such intoxicating liquor * * * are prohibited in such State." It is therefore necessary to consider the law of the State of Kansas pertaining to intoxicating liquor. The Kansas statute which prohibits the possession or sale of intoxicating liquor reads as follows: G.S. of Kansas 1935, "21-2101. It shall be unlawful for any person to directly or indirectly manufacture, sell, barter, or give away, furnish or keep or have in his possession for personal use or otherwise any spirituous, malt, vinous, fermented or other intoxicating liquors, or permit another to have or keep or use any such liquors on any premises owned or controlled by him, except druggists or registered pharmacists, as hereinafter provided. * * *"

Intoxicating liquor is defined by the Kansas statute as follows: G.S. of Kansas 1939 Supp., "21-2109. The terms spirituous, malt, vinous, fermented or other intoxicating liquors as used in sections 21-2101 to 21-2108, inclusive, of the General Statutes of 1935, and all amendments thereto, are hereby defined to include all beverages which contain more than three and two tenths percent (3.2%) of alcohol by weight and all such beverages are hereby declared to be intoxicating liquors under the laws of this state."

The federal statute upon which the indictment is based prohibits the transportation of liquor into any state in which all sales (with exceptions not here material) of intoxicating liquor containing more than 4 per cent. of alcohol by volume are prohibited. On the other hand, the Kansas statute defining intoxicating liquor includes such liquor as contains more than 3.2 per cent. of alcohol by weight. The record is devoid of proof as to the relative alcoholic content of a liquor or beverage in which al-

cohol constitutes 4 per cent. by volume and a liquor or beverage in which alcohol constitutes 3.2 per cent. by weight. What the fact may be in this regard is not of such common knowledge that the court may know it judicially. United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206; Wm. A. Smith Const. Co. v. Brumley, 10 Cir., 88 F.2d 803. Whether the laws of Kansas prohibit all sales of intoxicating liquor containing more than 4 per cent. of alcohol by volume depends upon whether 3.2 per cent. by weight is the same or less than 4 per cent. by volume. This presents a problem of translating terms used in one statute into terms used in another statute. We are cited to no recognized standards, tables or formulæ, by aid of which such translation of terms may be effected. We can not presume that it is impossible to have an alcoholic beverage containing not more than 3.2 per cent. of alcohol by weight, which contains more than 4 per cent. of alcohol by volume, and hence, we can not say that the federal act applies to the State of Kansas. The statute is applicable only where the state has adopted a control method coming within that outlined by the federal statute. Dunn v. United States, 10 Cir., 98 F.2d 119, 117 A.L.R. 1302. The conviction on the indictment is therefore reversed.

There remains for consideration the appeal from the judgment and sentence on the information, which is based upon Section 390, Title 18 U.S.C.A. So far as here material, that section provides as follows: "Whoever shall knowingly ship or cause to be shipped from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States * * * any package of or package containing any spirituous, vinous, malted, or other fermented liquor, or any compound containing any spirituous, vinous, malted, or other fermented liquor * * * unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein, shall be fined," etc.

The information charged defendant with unlawfully and knowingly shipping and causing to be shipped from the State of Il-

linois into the State of Missouri 150 gallons of distilled spirits in packages which did not bear on the outside cover labels and markings as provided by this statute. The liquor covered by the information is the same as that involved in the indictment.

Defendant contends that the statute has reference only to common carriers, and that properly construed, the word "ship," as used therein, does not involve transportation. As this is a criminal statute, it must be construed strictly, and it can not be enlarged by implication or intendment beyond the fair meaning of the language used. It should not, of course, be construed so as to defeat the obvious intention of Congress. A statutory offense can not be established by implication and there can be no constructive offense. Before an accused can be punished, his act must be plainly within the statute. United States v. Resnick, 299 U.S. 207, 57 S.Ct. 126, 81 L. Ed. 127; Donnelley v. United States, 276 U.S. 505, 48 S.Ct. 400, 72 L.Ed. 676; Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; First Natl. Bank of Anamoose v. United States, 8 Cir., 206 F. 374, 46 L.R.A.,N.S., 1139. In construing the statute, it is important to have in mind the evil which it was intended to remedy. This statute was the third and last section of the Act of March 4, 1909, known as the Knox Act. The conditions which prompted its enactment were referred to by this court in Blumenthal v. United States, 8 Cir., 88 F.2d 522, 525, where we said: "In the early 80's, a number of the states of the Union had enacted prohibition laws. These local laws were to a very considerable degree rendered ineffectual by the decisions of the Supreme Court to the effect that because of the operation of the commerce clause of the Constitution, the local laws could not be made applicable to intoxicating liquor coming from abroad, until or unless such liquor had become mingled with the common mass of property within the territory entered. Bowman v. Chicago & N. W. Ry. Co., 125 U.S. 465, 8 S.Ct. 689, 1062, 31 L. Ed. 700; Leisy v. Hardin, 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128. In an attempt to enable the states to enforce their local prohibition laws, Congress passed the so-called Wilson Act August 8, 1890 (27 U.S.C.A. § 121), which provided that intoxicating liquor transported into a state for use, consumption, or sale should become subject to state laws, and should not be exempt by reason of being introduced in the original package or otherwise, but under this act it was held that intoxicating liquors could be introduced into a state unaffected by the state law until delivery of the same. Rhodes v. Iowa, 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088; American Express Co. v. Iowa, 196 U.S. 133, 25 S.Ct. 182, 49 L.Ed. 417; Heymann v. Southern R. Co., 203 U. S. 270, 27 S.Ct. 104, 51 L.Ed. 178, 7 Ann. Cas. 1130. By resort to a C.O.D. sale of liquor in the channels of interstate commerce, liquor distributions in the dry states were still possible. In these circumstances, and as a result of them, the Knox Act was passed March 4, 1909."

The first section of this act prohibits delivery of interstate shipments of intoxicating liquor to anyone other than the bona fide consignee thereof, and it specifically applies to officers, agents and employees of railroads, express companies, or other common carriers. The next section also refers to common carriers and prohibits them from collecting the purchase price from the consignee or any other person before or after delivery and prohibits such carrier from acting as the agent of the buyer or seller of any such liquor. The next section, which is the section now under consideration, provides that "whoever shall knowingly ship or cause to be shipped" intoxicating liquor in interstate commerce without labeling the packages on the outside so as to show the name of the consignee, the nature of the contents and the quantity contained in the package, shall be subject to fine. It is the contention of the defendant that the word "ship," as used in this act, does not import transportation; that it has reference only to the act of a shipper in preparing the packages for shipment and making delivery to a common carrier. At the time of the enactment of this act, the evil sought to be remedied was in connection with common carriers and common carriers only. The primary idea of the verb "ship" is to place on board a ship or vessel for transportation. It is defined in Webster's International Dictionary to mean, "To commit to any conveyance for transportation." It is very commonly used as meaning the act of delivering to a carrier for shipment. Lamborn & Co. v. Log Cabin Products Co., D.C.Minn., 291 F. 435.; Harrison v. Fortlage, 161 U.S. 57, 58, 16 S.Ct. 488, 40 L.Ed. 616; State v. Carson, 147 Iowa 561, 126 N.W. 698, 140 Am.St. Rep. 330. In Lamborn & Co. v. Log Cabin

Products Co., supra [291 F. 438], Judge Booth, now of this court but then District Judge, in referring to the meaning of the term "shipment" as used in the contract under consideration, held that the term "to ship by" meant, " 'to put on board,' and does not include the subsequent carriage." In Harrison v. Fortlage, supra [161 U.S. 57, 16 S.Ct. 490, 40 L.Ed. 616], Mr. Justice Gray, who wrote the opinion, said: "This contract was made in June, 1889, for the sale of sugar, described as 'shipping or to be shipped during this month from the Philippines to Philadelphia, per steamer Empress of India.' A contract 'to ship by' a certain vessel for a particular voyage ordinarily means simply 'to put on board,' not including the subsequent carriage; and there is nothing in this contract to show that a different meaning was in the contemplation of the parties."

The case most nearly in point here is that of State v. Carson, supra. In that case defendant had been convicted of shipping some birds out of the state. The shipment had in fact been intercepted and was not transported out of the state, and this, it was contended, took the case from the operation of the statute. In the course of the opinion, it is said [147 Iowa 561, 126 N. W. 699]: "We are of opinion that the delivery to the carrier for transportation to a point beyond the boundary of the state constituted a violation of the statute. The word 'ship,' as therein used, must be given its usual and ordinary meaning, for there is nothing in the law itself which indicates a different legislative intent. The words 'ship' and 'shipment' are now generally used to express the idea of goods delivered to carriers for the purpose of being transported from one place to another, and such signification is given to them by lexicographers generally. Webster's International Dict.; the Century Dict. The law dictionaries give substantially the same definitions. See Abbott's, Bouvier's, and Rapalje & Lawrence's. The adjudicated cases are in general accord on the question. In a leading case in England, Bowes v. Shand, L.R. 2 App.Cas. 455, the court was unanimously of the opinion that the word 'shipped' according to its natural and ordinary signification and meaning was the putting of goods on board a vessel and taking a bill of lading therefor * * *."

It is true that the word is susceptible of meaning to carry or transport, but that is neither its primary nor ordinary meaning, and here we are considering a criminal statute. If this section be construed as referring only to one who delivers to a carrier goods for transportation, then the entire act seems to be a reasonable regulation of both the carrier and the shipper of intoxicating liquor. In view of the evils sought to be remedied and the situation existing at the time of the adoption of this act, we think it should be limited to the preparation and delivery of packages of intoxicating liquor to a common carrier for transportation in interstate commerce. One Truck Load of Whisky v. United States, 6 Cir., 274 F. 99; United States v. Eighty-seven Barrels of Wine, D.C. Vt., 180 F. 215; United States v. Freeman, 239 U.S. 117, 36 S.Ct. 32, 60 L.Ed. 172. The evidence is undisputed that the transportation here under consideration was not by common carrier. As we have pointed out, at the time this statute was enacted, the evil sought to be remedied arose entirely through interstate transportation of intoxicating liquor by common carrier. As said by this court in First Nat. Bank of Anamoose v. United States, supra [206 F. 376, 46 L.R.A.,N.S., 1139], "A penal statute which creates a new crime and prescribes its punishment must clearly state the persons and acts denounced. A person who, or an act which, is not by the expressed terms of the law clearly within the class of persons, or within the class of acts, it denounces will not sustain a conviction thereunder."

The words "ship" or "cause to be shipped" ordinarily apply to transportation by common carrier, and at least at the time of the adoption of this law were intended to apply only to common carriers. If, therefore, private carriers are to be included, it must be effected solely by judicial construction. However desirable it might be to have the law include private carriers, it is not the province of the court in a criminal case to create an offense by construction. It follows that the judgments appealed from must be and are reversed and the cause is remanded, with directions to sustain the demurrer to the information and for such further proceedings under the indictment as shall be consistent herewith.