124

RELIABLE CONSTRUCTION & REALTY CO., Inc., v. WATERPROOFING SERVICE, Inc.

No. 96.

Municipal Court of Appeals for the District of Columbia.

Oct. 11, 1943.

David L. Blanken, of Washington, D. C., for appellant.

Leon M. Shinberg, of Washington, D. C. (Bernard Margolius, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

Appellant brought action for an alleged breach of a contract by which appellee undertook to waterproof the below grade walls of twenty-two houses constructed by appellant. The complaint alleged that after the work was completed water seeped through the walls and that this was due to appellee's defective work and constituted a breach of the guarantee provision of the contract. The case was submitted to a jury which found in appellee's favor.

At the trial there was little or no dispute that water was seeping into the basements of the houses. There was direct conflict of testimony, however, by experts and others as to the cause of the seepage. Appellant's witnesses testified it was due to appellee's defective work; and appellee's witnesses testified it was due to improper grading.

Appellant's president, Mr. Widre, was permitted to testify that when he first consulted Mr. Gordon, president of appellee, about doing the work, he informed Gordon he required "a guaranteed job" and Gordon replied he would get "a guaranteed job". This was admitted by Gordon. Widre was also permitted to testify that he understood from this conversation he was to receive "an efficient parging job" and that Gordon "guaranteed the basements against seepage for a period of five years."

Subsequent to this conversation appellee submitted a written proposal dated July 9, 1941, in the following form:

"We are pleased to submit our proposal to do work at the above described houses, as follows:

"Apply cement parging and Iron Waterproofing to the outside foundation walls below grade. Furnish and install drain tile and gravel, laid at the inside of the footings.

"Price: Twenty-Seven Dollars and Fifty Cents ($27.50) per house.

"Guarantee: Our standard five year certificate of guarantee will be issued upon completion of work and receipt of payment for same.

"Terms of Payment: Payments as work progresses; final payment upon completion of our work.

"We are to be provided with sufficient free working space to perform our work. Ditches to be clear, and all surfaces to be treated by us, including footings and walls, shall be turned over to us clean and ready to receive our work. All excavating, grading, trenching, back-filling, etc., to be done by others at no cost to us."

On August 1 appellant in writing accepted the proposal. Widre testified that when the work was done and paid for he asked for a certificate of guarantee but never received it and never knew the contents of it. Gordon testified he signed a certificate for appellant, but there was no evidence it was mailed or delivered to appellant.

After appellant had introduced the written contract, appellee offered in evidence a copy of its certificate of guarantee in use at the time of making the contract. The material parts of this paper were:

"We guarantee that the Waterproofing done at * * * is free of defective material and workmanship, and should any leak occur through the surfaces waterproofed by us within a period of five (5) years, except through causes beyond our control, we will re-waterproof without charge.

"Among the causes beyond our control are: (1) earth backed against building at any point higher than our waterproofing (2) water backing up from sewers, traps, etc. (3) water overflowing at areas, grades, etc. (4) holes made through the waterproofed surfaces by nailing, punctures or otherwise (5) structural changes or fractures in the building (6) dampness caused by humidity (condensation).

"This guarantee covers only repairing or replacing any or all of the waterproofing applied by us under the contract dated * * *, and does not cover any extraneous responsibilities, costs, etc., or the performance of any other work not set forth or called for as being part of our work in the aforementioned contract.

"This guarantee is effective only after complete and final payment has been made, as called for in the aforementioned contract."

Appellant assigns as error the receipt in evidence of the certificate of guarantee, asserting that since appellant never received the certificate and never knew its contents, the introduction of the paper varied the express agreement of the parties. Appellant says the contract between the parties was that expressed in the conversation when it was agreed that appellant should receive "a guaranteed job," that this meant a "full and unconditional guarantee" whereas the guarantee set forth in the certificate was conditional and qualified.

■■ We see no merit to this contention. Aside from the questionable meaning of "a guaranteed job," it is evident that the conversation was but a preliminary negotiation looking to the execution of a written contract. Few contracts are executed without some prior negotiation and discussion, by correspondence or in conversation, but the agreement of the parties is that finally expressed in the written instrument. And where the instrument clearly sets forth the agreement, parol evidence will not be admitted to vary or contradict its terms.[1] Conversations leading up to the execution of a written contract are presumed to be merged and incorporated into the written instrument.[2] The rule was aptly stated in Union Selling Co. v. Jones, 8 Cir., 128 F. 672, 675, where the court said: "Where, without fraud, accident, or mistake, the written contract purports to be a memorial of the transaction, it supersedes all prior representations, proposals, and negotiations, and is conclusive evidence that it embodies such of these as were ultimately intended to become parts of the agreement, and that all others were rejected as not expressing the final intention of the parties."

Here, the contract as finally executed by the parties, was clear and definite. For the indefinite "guaranteed job" mentioned in the prior conversation, the contract called for a specific and definite type of guar-

[1] N. M. Minnix Co. v. L. C. Smith & Bros. Typewriter Co., 33 App.D.C. 357, 363.

[2] Ries v. Dodson, 3 Cir., 46 F.2d 68; Webster Co., Inc., v. Trinidad, etc., Co., 4 Cir., 92 F.2d 177.

126 ██ 

antee. In the absence of ambiguity there is no occasion for calling on parol testimony to enable the court to indulge in speculation as to the intent of the parties.[3] True, the agreement was not complete without appellee's standard form of certificate of guarantee but that was sufficiently identified by the contract.

██ Even though appellant had never seen appellee's standard certificate of guarantee and was not familiar with its contents, that was the only guarantee it contracted for and was entitled to receive. There was no evidence appellant sought to see the form of certificate before executing the contract or was deceived in any way as to its contents. "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." Upton v. Tribilcock, 91 U.S. 45, 50, 23 L.Ed. 203. Contracts are reduced to writing for the purpose of evidencing the agreement of the parties and to prevent misunderstandings and mistakes,[4] and courts have no right to disregard terms used by the parties or insert new terms not used by them.[5]

██ Appellant based its action on the breach of a guarantee. The only guarantee it was entitled to rely on was that specified in its contract, and without the certificate the guarantee provision of the contract was meaningless. The trial court was plainly right in receiving the certificate in evidence.

The foregoing also disposes of other assignments of error based on the trial court's refusal to grant certain instructions to the jury. These requested instructions ignored the terms of the certificate of guarantee called for by the contract. Such instructions, therefore, were properly denied.

██ Appellant finally assigns as error that the court declined to construe the contract of July 9 and left the construction of the contract to the jury. We find from the record that the court did construe the contract and properly ruled that the guarantee called for by the contract was that contained in appellee's certificate of guarantee. The court submitted to the jury the disputed question of fact whether the seepage

in the basements resulted from defective work on the part of appellee or from one or more of the causes listed as exceptions in the certificate of guarantee. The cause of the seepage was a proper question for determination by the jury.

Affirmed.

[3] Machen v. Yost, 54 App.D.C. 261, 296 F. 1008.

[4] Sudduth v. Storm King Coal Co., 6 Cir., 268 F. 433.

[5] Harrison v. Fortlage, 161 U.S. 57, 16 S.Ct. 488, 40 L.Ed. 616.