CARGILL, INC. *v.* THIBAULT MILLING CO.

5-1857                                           328 S. W. 2d 362

Opinion Delivered September 21, 1959.

[Rehearing denied November 23, 1959]

*MeHaffy, Smith & Williams,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

PAUL WARD, Associate Justice. On July 26, 1955, appellee, Thibault Milling Company, placed an order with appellant, Cargill, Incorporated, for 2,000 bushels of corn. There was no written contract but it is agreed by all parties that the offer by appellee and acceptance by appellant did constitute a contract, the essential terms of which were as follows: The price was to be $1.66 a bushel delivered at Little Rock and the grain was to be "shipped from Chicago" not later than July 30, 1955. It seems that in the normal course of events the carload should have arrived in Little Rock not later than August the 7th. It actually arrived from five to seven days later at which time the appellee refused to accept the shipment. After all attempts to compromise had failed, appellant sold the grain at the price of $1.44 per bushel, and then brought this action to recover the loss from appellee. The trial before the Circuit Judge, sitting as a jury, resulted in a judgment in favor of the appellee.

Under the view which we have chosen to take it is necessary here to consider only one question and that is whether appellant breached the contract by failing to ship the grain from Chicago on or before July 30, 1955. Under the well-established rule that the finding of the trial judge in this instance must be given the same weight as a finding by a jury, the judgment of the trial court must be affirmed if we find in the record substantial evidence to support it.

We find that the record discloses that the grain was delivered to the Chicago and Northwestern Railway Company in Chicago on July 28th or 29th. It is the contention of appellant that this constituted a shipment and hence a compliance with the contract under the holding in *Arnold* v. *U. S.*, 8 Cir., 115 F. 2d 523. In this opinion, among other things, it is stated: "The primary idea of the verb 'ship' is to place on board a ship or vessel for transportation. It is defined in Webster's International Dictionary to mean, 'To commit to any conveyance for transportation.' It is very commonly used as meaning the act of delivering to a carrier for shipment." Similarly and to the same effect our attention is called to the definition of "ship" or "shipment" as found in 80 C. J. S. at Pages 558-561.

On the other hand appellee appears to take the position that the grain in this instance was not actually shipped until it was delivered to the Chicago, Rock Island and Pacific Railroad Company in Chicago, and it is appellee's further contention that it was not received by the latter railroad company until August 3rd. This contention is necessarily based on the theory that the Chicago and Northwestern Railway Company performed only a switching service as the agent for appellant, and that it was not in a legal sense a carrier. We find from the record substantiation for this theory. In the cross interrogatories of W. B. Saunders, who is Assistant Vice President of appellant, he stated that the Chicago and Northwestern Railway Company issued to appellant a switching receipt on July 29, 1955. The record contains a letter dated July 17, 1957, from the agent of said

Chicago and Northwestern Railway Company to appellant's manager in which it is stated, among other things, that his railroad company "made interline switching waybill" on this particular car of grain and that it "was switched" by his company to the Chicago, Rock Island and Pacific Railroad Company and that his company "handled this car in switching district." It was further stated in the letter that the Chicago, Rock Island and Pacific Railroad Company was the "road haul carrier." There is in the record some evidence that the Chicago, Rock Island and Pacific Railroad Company actually received the carload of grain before July 30, 1955, however, there is substantial evidence, we think, in the record from which the trial court could have found that the car of grain was not received by it until August 3, 1955. At Page 102 of the record is photostatic copy of the freight waybill of the Chicago, Rock Island and Pacific Railroad Company showing that this car of grain (No. 52919) was received and shipped on August 3, 1955. At Page 39 of the record is a letter from the General Agent of the said railroad company addressed to appellant relative to said Car No. 52919. One paragraph in this letter reads as follows: "Due to a typographical error we advised that the car moved in July; the correct month should be August. The time and days are the same as quoted." The previous letter referred to shows the date to be July 3rd but the above letter shows that the correct date is August 3rd. At Page 45 of the record is a statement marked "Exhibit F (to statements in response to interrogatories)" in which it is said, among other things, "Pulled by CRIP (Chicago, Rock Island and Pacific Railroad) from S. Chicago to Blue Island 11:00 A. M., 8—3—55." There is also in evidence a letter from the Missouri Pacific Railroad Company, which was the delivering carrier to appellee, addressed to appellee at Little Rock in which it is stated: ". . . wish to advise our file has no reference to shipment being forwarded prior to August 3, 1955."

We set out the above excerpts from the record to show what we think is substantial evidence to support the trial judge's finding that the car of grain was not

delivered to the Chicago, Rock Island and Pacific Railroad Company until August 3, 1955. The only questionable issue is whether the delivery to the Chicago and Northwestern Railway Company prior to July 30th constituted a "shipment from Chicago" in accordance with the terms of the contract between the appellant and the appellee. A careful scrutiny of the record convinces us that such a delivery did not constitute a compliance with the contract. It is admitted that the contract states that the car of grain was to be "shipped from Chicago." Ordinarily we would not think much significance should be attached to the word "from" but we think the word does have significance under all the facts and circumstances in this case. It appears clearly from the testimony that the price of grain fluctuated from day to day and it is obvious that the appellee could suffer a severe financial loss unless it could have assurance that a shipment of grain would be received in the ordinary course of business. It is not denied that in this case the car of grain should have arrived in Little Rock within five to seven days sooner than it did. If we are to attach significance to the word "from" as we have indicated, then the *Arnold* case, *supra,* relied on by appellants would not be controlling. We gather from the record that it was not expected by appellant that the Chicago and Northwestern Railway Company would move the car of grain "from Chicago." It seems that this railroad company merely performed switching operations between appellant and the "road haul carrier," which, in this instance, was the Chicago, Rock Island and Pacific Railroad Company. Certainly it appears that appellant was aware of the fact that appellee had a right to expect prompt arrival of the grain in due course and it was also well aware of the fact that the car of grain in this instance would not start on its way out of Chicago to Little Rock until it came into the possession of the Chicago, Rock Island and Pacific Railroad Company. This being the case, we think the burden was on appellant to see that the car of grain was delivered to the latter company on or before July 30th.

Finding substantial evidence to support the judgment of the trial court the same is hereby affirmed.

Affirmed.

McFADDIN, J., not participating.